## CHARLOTTE PALIMAS *v.* ARESS REALTY COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, Js.

Argued February 1—decided April 18, 1944.

*Harry Schwartz,* with whom, on the brief, was *Robert R. Rosan,* for the appellant (defendant).

*Philip Reich,* with whom were *J. Robert Nowitz* and, on the brief, *Samuel Reich,* for the appellee (plaintiff).

JENNINGS, J. The plaintiff was injured by an explosion in a furnace being tended by her. The furnace heated a building owned by the defendant and used as a rooming house. The plaintiff was a tenant. The plaintiff's claims of proof relevant to the issues considered on the defendant's appeal from the judgment may be summarized as follows: The detached house in question was one of many buildings owned and rented in Bridgeport by the defendant. It was rented on a monthly basis to Mrs. Clara Munn, who ran it as a rooming house. The plaintiff and her husband occupied a room under an agreement with Mrs. Munn whereby, in return for the rendering of certain housecleaning services and the care of the furnace by the plaintiff, they had the use of their quarters without further payment. The defendant employed a handy man, William Gerwien, whose duty it was to make all necessary repairs on the properties owned by it. He had installed the furnace in 1937 and had made repairs to it and to other parts of Mrs. Munn's house before the injury to the plaintiff. The defendant had assumed the duty of making all necessary repairs upon the premises, but there was no claim that it had reserved any control over the furnace as regards its ordinary operation.

Prior to January 20, 1940, the plaintiff had noticed puffs of smoke from the furnace, and on that day there was an explosion which blew open the door and blew the smoke pipe out of the chimney. In accordance with instructions from Mrs. Munn, all of these occurrences were reported to the president of the defendant. After the explosion of January 20 the defendant undertook to correct whatever condition was causing the backfires and explosions in the furnace but Gerwien, the repair man, only replaced the smoke pipe and failed to remove the soot which had accumulated in the chimney. On February 1, 1940, there was another explosion, as a result of which the plaintiff was injured. The explosion was caused by an accumulation of soot in the chimney, resulting from the use of the furnace in ordinary course, of which the defendant knew or should have known.

The defendant's claims of proof were that there were no agreement to repair, no control of the premises for the purpose of repair, no need of repair and no notice of need of repair, and that the keeping of the chimney free of accumulations of soot was a function of routine cleaning and maintenance for which the tenant was exclusively responsible.

The case was submitted to the jury on three possible bases of liability: (1) Retention of control of the premises by the landlord; (2) an implied covenant to repair; (3) an undertaking by the landlord to remedy a defective condition but doing it negligently.

The defendant produced in chief an expert who was asked whether the cleaning of soot from the chimney was a part of the operation of maintaining, coaling and firing the furnace. The purpose of the question was obviously to prove that the cleaning of soot from the chimney was part of the routine operation of the furnace rather than a repair for which it was claimed the

defendant was responsible. This purpose is shown by the defendant's claims of proof and has been pressed in brief and argument. The questions asked of him in view of the claims of proof go to an important phase of the case and were relevant and admissible. Their exclusion must be held to have been harmful error as far as the first and second bases of liability are concerned.

The trial court charged as to the third issue as follows: "And if you find that the defendant, prior to February 1, 1940, had notice that there was a defective condition in the heating system of the house which caused backfires or explosions in the furnace and the defendant undertook to remedy this condition, then it was the defendant's duty to use reasonable care to remedy the condition, and, if you find that it failed to use such reasonable care, then that failure constituted negligence."

Assuming that this charge was correct as far as it went, it was altogether inadequate to present this important issue to the jury. No claims of proof of the plaintiff could be construed to prove any structural defect in either the heating plant or the chimney. The most that could be said for them is that they showed a natural accumulation of soot in the chimney. The only repair actually made by the defendant was to replace the smoke pipe which was blown out of the chimney. The charge was devoid of any instructions to the jury as to what duty, if any, devolved on the defendant to discover the cause of the explosion. The obvious and visible defect was the condition of the smoke pipe and that was repaired.

It is true that a landlord gratuitously undertaking repairs who makes them negligently and thereby causes injury to a person lawfully using the premises is liable. *Chipman* v. *National Savings Bank*, 128 Conn. 493,

495, 23 Atl. (2d) 922; *Kirshenbaum* v. *General Outdoor Adv. Co.*, 258 N. Y. 489, 496, 180 N. E. 245; *Klais* v. *Guiton*, 344 Pa. 600, 601, 26 Atl. (2d) 293. Some negligence in the actual performance of the landlord's undertaking is, however, required if liability is to be imposed. Mere nonfeasance is not enough. *Galvin* v. *Beals*, 187 Mass. 250, 253, 72 N. E. 969; *Wynne* v. *Haight*, 27 App. Div. 7, 10, 50 N. Y. S. 187; *Marston* v. *Frisbie*, 168 App. Div. 666, 670, 154 N. Y. S. 367; *Kirshenbaum* v. *General Outdoor Adv. Co.*, supra; Restatement, 2 Torts, § 362; Bohlen, Studies in the Law of Torts, p. 224; 32 Am. Jur. 551, § 682. This limitation on the doctrine was not explained to the jury.

Lastly, neither in connection with this paragraph nor elsewhere in the charge was the care required of the plaintiff adequately defined. The character of the defect alleged and the fact that the plaintiff was familiar with this furnace and had actually operated it for some time made this particularly important. For the reasons stated, the charge with reference to the issue under consideration was not submitted to the jury under proper instructions.

In the case of *Miller* v. *Mutual Mortgage Co.*, 112 Conn. 303, 152 Atl. 154, this court said (p. 306): "The finding to the effect that the defendant caused repairs to be made within the house and apartments, upon request of the tenants, may be regarded as implying a covenant by the landlord to repair, embracing the stairway, although it was under the control of the tenant, Smith." The trial court followed this case and charged to the effect that a covenant by a landlord to make repairs may be implied from the fact that he caused repairs to be made upon the request of the tenant. This is assigned as error and the question will arise if there should be a new trial.

In the absence of a covenant to repair the landlord is under no obligation in this regard. *Chambers* v. *Lowe*, 117 Conn. 624, 628, 169 Atl. 912; *Papallo* v. *Meriden Savings Bank*, 128 Conn. 563, 564, 24 Atl. (2d) 472. The statement quoted from the *Miller* case was not necessary to the decision, which went off on the question of notice. No authority is cited in support of the particular point made nor has any been found. Such cases as have passed on it reach the opposite conclusion. The basic ground of this ruling appears to be that the facts are open to too many explanations to justify an inference of the recognition of the specific obligation involved. *Moore* v. *Weber*, 71 Pa. 429, 432. "It is not infrequent that a landlord's self-interest will prompt him to do many things to his property, during the term of a lease of it, to protect it from decay or injury, but his so doing does not make him a covenantor to repair." *Quinn* v. *Crowe*, 88 Ill. App. 191, 194. Such repairs are also referred to as mere gratuitous acts. *Whitehead* v. *Comstock & Co.*, 25 R. I. 423, 428, 56 Atl. 446; *Martin* v. *Rich*, 288 Mass. 437, 440, 193 N. E. 21; *Conahan* v. *Fisher*, 233 Mass. 234, 238, 124 N. E. 13. An agreement to repair will not be implied from a provision in a written lease giving the landlord the right to enter to make repairs. *Gulliver* v. *Fowler*, 64 Conn. 556, 567, 30 Atl. 852. See also *Elefante* v. *Pizitz*, 182 App. Div. 819, 821, 169 N. Y. S. 910; 2 Underhill, Landlord & Tenant, p. 850; 1 Tiffany, Landlord & Tenant, p. 582; 36 C. J. 209, § 881. Reason and authority thus indicate that in the absence of special circumstances repairs made by a landlord voluntarily or at the request of the tenants will not in themselves support a finding of an agreement to repair. In so far as the *Miller* case holds to the contrary it is overruled.

It is unnecessary to consider the appeal from the denial of the motion to set aside the verdict.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.