STATE OF CONNECTICUT *v.* TIPPETTS-ABBETT-MCCARTHY-STRATTON
(13049)

STATE OF CONNECTICUT *v.* KNAPPEN-TIPPETTS-ABBETT-MCCARTHY ET AL.
(13050)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and SPALLONE, Js.

Argued May 7—decision released June 23, 1987

*Arnold J. Bai,* with whom were *Garie J. Mulcahey, Robert J. Morrin,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Arnold K. Shimelman,* assistant attorney general, for the appellant (state).

*William B. Rush,* with whom was *Sharon A. Cregeen,* for the appellees (defendants in each case).

PETERS, C. J. The dispositive issue in these appeals is the propriety of the trial court's refusal to allow the jury to consider whether the defendants were liable to the plaintiff under a theory of absolute public nuisance. The defendants, Tippetts-Abbett-McCarthy-Stratton and Knappen-Tippetts-Abbett-McCarthy,[1] designed and supervised the construction of the Mianus River bridge (the bridge) on the Connecticut Turnpike in Greenwich. On June 28, 1983, a span of the bridge collapsed into the Mianus River. The plaintiff, the state of Connecticut, brought actions against the defendants seeking damages for expenses it allegedly incurred as a result of the collapse, including, inter alia, the expense of reconstructing the bridge. The cases against the two defendants were consolidated for a jury trial. On August 14, 1986, the jury returned a verdict in the defendants' favor. The plaintiff appealed the judgments in favor of both defendants to the Appellate Court. This court subsequently transferred the appeals to itself. We find no error.

The following facts are undisputed. The defendants designed the bridge and supervised and inspected its construction pursuant to a June 24, 1954 contract with the plaintiff. The plaintiff approved the design of the bridge and accepted the bridge as part of its highway system on June 18, 1959.

---

[1] Knappen-Tippetts-Abbett-McCarthy, a New York based partnership, changed its name to Tippetts-Abbett-McCarthy-Stratton in April, 1955. For purposes of this appeal, the two defendants may be deemed to constitute a single entity.

The plaintiff's revised complaint, identical in both cases, was in three counts. The first count, sounding in negligence, alleged that the defendants had improperly designed, inspected and supervised construction of the bridge. Specifically, the plaintiff alleged that the defendants had improperly designed the mechanisms that supported and linked the bridge's horizontal spans, and that these design flaws ultimately had led to the collapse of the bridge and the plaintiff's resulting damages. The second count of the complaint alleged that the design and construction of the bridge, for which the defendants were responsible, constituted an absolute public nuisance which had continued unabated until the bridge collapsed. The third count of the complaint sought indemnification from the defendants for claims that the plaintiff had paid to third parties as compensation for deaths and injuries that had occurred as a result of the bridge's collapse.

Trial commenced before a jury of six on July 8, 1986. On August 13, 1986, at the conclusion of all of the testimony, the trial court ordered the plaintiff's second count, alleging absolute public nuisance, to be stricken. The plaintiff later took exception to the trial court's failure to charge the jury on the nuisance count.

On August 14, 1986, the jury returned a verdict in the defendants' favor on the two remaining counts of the plaintiff's complaint. In addition, the jury answered several interrogatories submitted to it by the trial court. Interrogatory question one on the negligence count read: "Did the plaintiff, State of Connecticut, prove that the defendants were negligent and that such negligence was the proximate cause of the plaintiff's injuries?" The jury's answer was "No." Interrogatory question two on the indemnification count read: "Did the plaintiff, State of Connecticut, prove that the injuries to third parties were proximately caused by the defendants' performance of the work covered by the

[indemnification] agreement [in the 1954 contract]?" The jury's answer was "No."[2]

On August 18, 1986, the plaintiff filed a motion to set the verdict aside, claiming, inter alia, that the court had erred in failing to charge the jury on the second count of the plaintiff's complaint alleging absolute public nuisance.[3] In a September 3, 1986 memorandum denying the motion to set aside the verdict, the trial court justified its refusal to submit the nuisance claim to the jury on two grounds: (1) the defendants had not used property in an unlawful or unreasonable manner, as required to establish nuisance liability; and (2) the plaintiff, the owner of the bridge, having at most suffered a "private proprietary injury" as a result of the collapse, had not exercised a public right and thus could not make out a claim for public nuisance.

On appeal, the plaintiff reiterates its claim that the trial court erred in refusing to submit the nuisance claim to the jury. Essentially, the plaintiff argues that it produced sufficient evidence at trial to permit the jury reasonably to find that the bridge, as designed and engineered by the defendants, constituted an absolute public nuisance for which the defendants could be held liable. In response, the defendants claim that the trial court acted properly because: (1) the plaintiff failed to prove the elements of nuisance; (2) the defendants could not be held liable for nuisance in the absence of a showing of an unreasonable or unlawful use of land on their part; (3) the defendants could not be held liable for nuisance when they did not create or maintain the bridge,

---

[2] The jury responded "Yes" to the first interrogatory on the indemnification count, which read: "Did the plaintiff State of Connecticut prove that at the time it made payment on the third parties' claims, that [sic] the indemnification agreement was in effect?"

[3] The plaintiff proffered five separate grounds for setting aside the verdict. On this appeal, however, the plaintiff challenges only the trial court's refusal to charge on the nuisance count.

which was the source of the claimed nuisance; and (4) the plaintiff could not recover for public nuisance because it had not established its exercise of a public right.

Apart from these arguments about the parameters of the law of nuisance, the defendants also claim that the plaintiff's appeals are moot. This argument relies on the inferences to be drawn from the findings of the jury, evidenced by its responses to the interrogatories, that, according to the defendants, definitively establish that "the collapse was not caused by the negligence of the defendants and that the damages and injuries claimed by the [plaintiff] were not 'proximately caused by the defendants' performance of the work covered by the agreement.' "

If this claim were truly one of mootness, we would be obligated to consider its validity before turning to the merits of the remaining issues concerning the law of nuisance. It is familiar learning that mootness is jurisdictional. *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 496–97, 522 A.2d 264 (1987); *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985). The defendants' label of mootness does not, however, characterize their claim appropriately. In reality, they are raising an argument of collateral estoppel: that is, that the plaintiff is precluded from challenging the jury's disposition of an essential question of fact, namely proximate causation, in any subsequent litigation. See *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 205, 520 A.2d 208 (1987); see generally *State* v. *Fritz,* 204 Conn. 156, 527 A.2d 1157 (1987). The term "mootness," by contrast, typically applies to a situation where, during the pendency of an appeal, events have occurred that make an appeals court incapable of granting practical relief through a disposition on the merits. See *State* v. *Hope,* 203 Conn. 420, 424, 524 A.2d 1148 (1987); *Hartford*

*Principals' & Supervisors' Assn.* v. *Shedd,* supra, 496–97; *Shays* v. *Local Grievance Committee,* supra, 571–72. As a claim of collateral estoppel, the defendants' argument would require us to undertake a close examination of the record to discern what issues, if any, have been determined in prior litigation and thus may not be relitigated.[4] See generally *Ashe* v. *Swenson,* 397 U.S. 436, 443–44, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Ellis,* 197 Conn. 436, 467–70, 497 A.2d 974 (1985). In the circumstances of this case, we have decided that it is preferable for us to address the merits of the nuisance claim directly.

On the merits, we agree with the trial court, and the defendants, that the count of the plaintiff's complaint alleging absolute public nuisance was properly withdrawn from the jury because the defendants did not use property in an unreasonable or unlawful manner, and thus could not, as a matter of law, be found liable on a nuisance theory. Accordingly, we need not address the other issues concerning the law of public nuisance raised by the parties in these appeals.

As a threshold matter, we agree with the plaintiff that the trial court's withdrawal of the nuisance claim from the jury was tantamount to a directed verdict on that issue. For this reason, in reviewing the court's refusal to charge the jury on the nuisance claim, and its subsequent denial of the plaintiff's motion to set

---

[4] The existence of collateral estoppel, on the present record, is not immediately self-evident. The jury's responses to the negligence interrogatories are ambiguous: they establish either that the defendants were not negligent, or that their negligence did not cause the plaintiff's injuries, or both. The jury's response to the indemnification interrogatory, on its face, establishes only that the defendants' performance of the contract with the plaintiff did not cause injuries to third parties. Absent a more extensive review of the record, which we deem unnecessary in view of our disposition of the appeals on other grounds, we will not definitively resolve the issue of whether the plaintiff would have been collaterally estopped from raising its nuisance claim in a second trial.

aside the verdict based on that refusal, " 'this court considers all the evidence, including reasonable inferences, in the light most favorable to the plaintiff.' " *Bleich* v. *Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985); *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 (1979).

Our prior decisions have established that in order to prevail on a claim of nuisance, a plaintiff must prove that: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was a proximate cause of the plaintiffs' injuries and damages." *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 35–36, 404 A.2d 889 (1978); *Kostyal* v. *Cass,* 163 Conn. 92, 99–100, 302 A.2d 121 (1972); *Heilig* v. *LeQuire,* 4 Conn. App. 125, 127, 492 A.2d 542 (1985). In this case, where absolute public nuisance is alleged, the plaintiff's burden includes two other elements of proof: (1) that the condition or conduct complained of interfered with a right common to the general public; *Higgins* v. *Connecticut Light & Power Co.,* 129 Conn. 606, 611, 30 A.2d 388 (1943); *Nolan* v. *New Britain,* 69 Conn. 668, 678, 38 A. 703 (1897); 4 Restatement (Second), Torts § 821B; and (2) that the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance. *Kostyal* v. *Cass,* supra, 98; *Beckwith* v. *Stratford,* 129 Conn. 506, 511, 29 A.2d 775 (1942); *Dingwell* v. *Litchfield,* 4 Conn. App. 621, 624, 496 A.2d 213 (1985); 1 F. Harper & F. James, Torts (1956) p. 82 n.2.

Our case law has established no bright-line test to determine when a defendant's connection to a particular parcel of property suffices to make it an unreasonable or unlawful "user" of that property. While the defendant in a nuisance action frequently is the owner

of the property alleged to be the source of nuisance; see, e.g., *Filisko* v. *Bridgeport Hydraulic Co.*, supra; *Beckwith* v. *Stratford,* supra; property ownership is not a prerequisite to nuisance liability. See, e.g., *Perkins* v. *Weibel,* 132 Conn. 50, 52, 42 A.2d 360 (1945) (tenant may be liable for injuries caused by nuisance on leased property); see generally VI-A American Law of Property (1954 & 1962 Sup.) § 28.30, p. 84.

In lieu of a rule of general application, our cases frequently have applied a functional test to determine whether a defendant "uses" property in a manner sufficient to subject him to liability for nuisance. A critical factor in this test is whether the defendant exercises control over the property that is the source of nuisance. For example, a landlord's liability for nuisance caused by a defective condition on leased property is determined, in part, by whether the portion of the property on which the condition exists is in the landlord's control or the tenant's. See *Bentley* v. *Dynarski,* 150 Conn. 147, 151–52, 186 A.2d 791 (1962); *Fonseca* v. *Lavado,* 28 Conn. Sup. 509, 511, 268 A.2d 415 (1970). Similarly, when circumstances show that a defendant exercises de facto control over nuisance-causing property, the fact that title or possession of the property has been transferred to others does not absolve the defendant of liability for the nuisance. *Henriques* v. *Rockefeller,* 148 Conn. 654, 658–59, 173 A.2d 596 (1961). In addition, we have held that a defendant municipality may be held liable for a nuisance caused by noxious smoke and gas emitting from a dump on property which it controls, although the immediate cause of the offensive emissions was unauthorized dumping and burning by a third party who was not the defendant's agent. *Wheaton* v. *Putnam,* 126 Conn. 330, 335, 11 A.2d 358 (1940); see also *Marchitto* v. *West Haven,* 150 Conn. 432, 437, 190 A.2d 597 (1963).[5]

---

[5] Our case law has established that a municipality must be shown to have both created and maintained a nuisance in order to be liable for an injury

Other jurisdictions have explicitly recognized control as an essential predicate to nuisance liability. "Liability for damage caused by [a nuisance] turns upon whether the defendant was in control, either through ownership or otherwise." *Kurtigian* v. *Worcester,* 348 Mass. 284, 285, 203 N.E.2d 692 (1965); *Abruzzese* v. *Arlington,* 7 Mass. App. 882, 882, 387 N.E.2d 154 (1979); *Steman* v. *Coffman,* 92 Mich. App. 595, 598, 285 N.W.2d 305 (1979); see also *Coburn* v. *Public Service Commission,* 104 Mich. App. 322, 327–28, 304 N.W.2d 570 (1981); *Scott* v. *Olivia,* 260 Minn. 346, 353–54, 110 N.W.2d 21 (1961).

Like the other elements of the tort of nuisance, the question of whether a defendant maintains control over property sufficient to subject him to nuisance liability normally is a jury question. See *Peterson* v. *Oxford,* 189 Conn. 740, 747, 459 A.2d 100 (1983); *Filisko* v. *Bridgeport Hydraulic Co.,* supra, 36; *Chazen* v. *New Britain,* 148 Conn. 349, 355, 170 A.2d 891 (1961). In this case, however, even if the pleadings and evidence are considered in the light most favorable to the plaintiff, there is nothing to suggest that the defendants ever assumed control of the subject property. It is undisputed that at all times relevant to these appeals, the bridge, and the highway right of way in which the bridge was included, was exclusively the property of the plaintiff. While, as discussed previously, ownership is not essential to nuisance liability, nothing in the evidence suggests that the plaintiff ever relinquished its authority

caused by it. *Lukas* v. *New Haven,* 184 Conn. 205, 209, 439 A.2d 949 (1981); *Wright* v. *Brown,* 167 Conn. 464, 470, 356 A.2d 176 (1975); *Brennan* v. *West Haven,* 151 Conn. 689, 692, 202 A.2d 134 (1964). Our emphasis, in this case, on the element of control in nuisance liability, is not intended to abrogate or delimit the requirements for establishing a municipality's liability for nuisance. To the contrary, a showing that a municipal defendant has created and maintained a nuisance-causing condition may concurrently serve as evidence that it controls the property on which the condition exists.

over the bridge to the defendants. To the contrary, the legislative enactment which authorized the construction of the Connecticut Turnpike, of which the bridge was an integral component, vested ultimate and exclusive responsibility for planning and constructing the expressway in the plaintiff's highway commissioner. See Public Acts 1953, No. 411 (2).[6]

Nothing in the 1954 contract between the parties purported to transfer the plaintiff's ultimate control over the bridge construction project to the defendants. While, pursuant to the contract, the plaintiff delegated to the defendants some of its immediate authority over the design and construction of the bridge, this delegation was narrowly circumscribed by the terms of the contract. Under the contract, the defendants assumed responsibility for the surveying, testing, planning and design of the bridge. The defendants were required, however, to allow the plaintiff's highway commissioner and his representatives "to review, at any time, the design work and construction in its various stages, and to make any revisions as may be directed by the Commissioner . . . . " The contract obligated the defendants to permit the plaintiff to audit its billings and to submit monthly reports to the plaintiff documenting the progress of the project. The defendants' power to subcontract was expressly made subject to the plaintiff's approval, and was conditioned upon compliance with terms imposed by the plaintiff. Furthermore, under the contract, the plaintiff agreed to "perform or arrange for the performance" of materials testing and analysis related to the bridge project. These and other terms of the contract permitted the plaintiff to maintain strict control over the planning and construction of the bridge, while relinquishing only limited responsibility for the project's execution to the defendants.

[6] Public Acts 1953, No. 411, as modified by subsequent amendments, now is codified in General Statutes § 13a-21.

The plaintiff's delegation of its authority over the bridge project was temporally as well as functionally limited. The contract established a strict timetable for the defendants to complete their contractual duties to the plaintiff, and provided for penalties in the event of delays. Once the plaintiff had inspected the completed bridge and, in 1959, authorized its acceptance into the state highway system, the defendants' involvement in the project ended. Thenceforth, the maintenance and operation of the bridge was the exclusive responsibility of the plaintiff.

Our review of the circumstances of this case leads us to the conclusion that the defendants did not exercise sufficient control over the bridge, or the property to which it was affixed, to render them subject to nuisance liability. Accordingly, the trial court did not err in refusing to charge the jury on the count of the plaintiff's complaint alleging absolute public nuisance. For the same reason, the trial court was correct in holding, in its memorandum of decision denying the plaintiff's motion to set aside the verdict, that the defendants' activities with respect to the bridge could not, as a matter of law, constitute an unreasonable or unlawful use of land.

There is no error.

In this opinion the other justices concurred.