[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT, INN AT MANCHESTER'S MOTIONTO STRIKE COUNTS. FIVE THROUGH NINE OF THE PLAINTIFF'S AMENDED COMPLAINTDATED JULY 25, 1995
The plaintiff, Phyllis D. Mantie, has brought this action as administratrix of the estate of Linda M. Mantie, in which she seeks to recover damages for the death of her decedent who sustained fatal injuries as the result of an automobile accident which occurred in Manchester on August 21, 1994, when she was riding as a passenger in a vehicle being operated by the defendant, Lynn Coda-Klein, who was making a left turn from Spencer Street to enter the private driveway of the Clarion Suites Inn, which is owned, operated and maintained by the CT Page 461 defendant, The Inn at Manchester, Inc. As the Coda-Klein vehicle was about to turn into the driveway, which is immediately north of the intersection of Spencer Street and Hillstown Road, it was struck on the passenger's side by a vehicle operated by the defendant, Lisa M. Meyers, which was traveling westbound in the right lane of Spencer Street, as a result of which the plaintiff's decedent suffered injuries which caused her death.
The last five counts of the plaintiff's nine count amended complaint are directed exclusively at the defendant, The Inn at Manchester, and allege that in 1988, the Inn applied for a special exception under the Manchester zoning regulations for the development and construction of a 100 room hotel on the northerly side of Spencer Street at its intersection with Hillstown Road. Paragraph 10 states that the town's traffic authority "concluded that the intersection could not bear any further development in light of a history of an inordinate amount of accidents involving Spencer Street eastbound traffic making left turns into an existing driveway which would serve as the entrance to the Inn's hotel."
The plaintiff states (¶ 11) that in order to have its application approved, the Inn proposed a plan for improving the intersection and agreed to undertake a plan of construction for road improvements including the widening and restriping of Spencer Street, the designation of exclusive left turn lanes at the intersection, as well as the replacement of the existing traffic signal with separate left turn phasing. In March of 1989 the Inn's application for a special exception was approved, including the intersection improvements which the Inn (¶ 12) "agreed to undertake on behalf of the [town] in conjunction with its hotel construction."
In July of 1991, the town "clarified and confirmed the Inn's obligation" (¶ 14) to improve the intersection after the construction of the hotel was completed, but (¶ 15) the Inn failed to construct the agreed improvements after the hotel was completed in 1991. Finally, each of the five counts alleges that the Inn "should have known that the agreed upon improvements to the intersection were necessary for the protection of the general public and in particular those entering the driveway to its hotel from the eastbound lane of Spencer Street."
The legal theories under which each count is brought are as follows, first, negligent performance of an undertaking (fifth CT Page 462 count), second, public nuisance (sixth count), third, third party beneficiary (seventh count), fourth, premises liability (eighth count) and fifth, violation of the Connecticut Unfair Trade Practices Act (CUTPA) as alleged in the ninth count. The defendant Inn has moved to strike counts five through nine on the ground that the plaintiff has failed to allege "the requisite elements and necessary facts to support [any of] the causes of action asserted against [it]."
 I
The plaintiff argues that the fifth count of her complaint sufficiently alleges a cause of action against the Inn based on subparagraph (b) of § 324A of the Restatement of Torts which reads as follows:
 Liability to Third Person for Negligent Performance of Undertaking
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
It is also stated by way of a caveat that the "Institute expresses no opinion as to whether . . . the making of a contract or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section." Comment a of the rule states that § 324A parallels the so-called "Good Samaritan" rule stated in § 323 as to the liability of a person to one he has undertaken to render services for directly, and is subject to the same caveats except that § 324A deals with his liability to third persons. CT Page 463
It has been held in a jurisdiction that has adopted the Restatement rule that it "provides for three alternative theories of recovery [and that neither] the rule nor the Restatement requires that a combination of, or all of, the theories be proven to establish liability [because the] rule is stated in the disjunctive [and proof] of either theory is a valid basis for recovery." Ray v. Transamerica Insurance Company, 208 N.W.2d 610
at 615 (Mich.App. 1973). The appellate court's decision in that case was affirmed by the Michigan Supreme Court which held that reliance by either an employee or his employer on a workmen's compensation insurer's safety inspections was not a prerequisite to recovery on the theory that the insurer had undertaken to perform the employer's duty to the employee to provide a safe place to work. Olkowski v. Aetna Casualty and Surety Co.,223 N.W.2d 296 (Mich. 1974).
Although the Restatement rule governing the liability of a negligent defendant to injured third parties has not been expressly adopted or construed by the courts of this state, the federal courts at both the trial and appellate levels have construed and applied Connecticut case law in the context of the liability of workers' compensation insurers for allegedly negligent safety inspections of the workplace provided by the insured employer which result in injuries to its employees. In a decision of the United States District Court, Judge Timbers stated by way of dictum, that under Connecticut law, "where a party voluntarily undertakes to do an act which if properly done could have prevented personal injury to another, that party is not liable for such injury if his undertaking neither was relied on by the injured party nor increased the danger to which the injured party was exposed." Bartolotta v. United States,276 F. Sup. 66 at 74 (D. Conn. 1967) (citing Palimas v. Aress RealtyCo., 130 Conn. 687 (1944)).
After the appeal from the ruling of the District Court in that case had been taken, the same issue was presented for the first time in a state court in Barrette v. Travelers InsuranceCo., 28 Conn. Sup. 1 (1968), by way of a demurrer to the complaint against an insurer which was sustained by the court (Grillo, J.) on the alternative ground that there was no breach of any duty owed by the: employer's insurer to the employees of its insured. Id. 8. The Circuit Court of Appeals relied on that decision in affirming the District Court's conclusion that even if the defendant did not share the statutory immunity of the employer, and accepting the general proposition that one who CT Page 464 assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, nevertheless "we think that Judge Timbers was correct in holding that there is no liability unless the negligent performance or nonperformance is either relied upon by the injured party or increases the risk of harm [and] there is absolutely nothing to suggest that the Connecticut Supreme Court would decide otherwise . . .".Bartolotta v. Liberty Mutual Insurance Co., 411 F.2d 115, 118-19
(2d Cir. 1969).
Counsel have neither briefed nor argued the applicability under the facts of this case of the federal court opinions inBartolotta, or of Judge Grillo's decision in Barrette which provided a basis in our state law for the Court of Appeals to conclude that even in the context of safety inspections by workers' compensation insurers, reliance by the plaintiff or an increase in the risk of harm continue to be essential elements of a common law cause of action brought by an injured employee The previously cited Michigan cases, Ray v. Transamerica,208 N.W.2d 610, and Olkowski v. Aetna, 223 N.W.2d 296, supra, in which the more liberal Restatement rule was adopted were clearly influenced by one of the principal public policy considerations involved in the state's workers' compensation laws, namely, the duty of every employer to provide a safe place to work for all of its employees and the state's interest in the enforcement of that duty where it is actively assumed by a third party. Ray, supra, 613-14).
The defendant's arguments in support of its motion to strike the fifth count are, first, that the plaintiff has failed to allege that the defendant's negligence increased the risk of harm as stated in subsection (a) of § 324A or that its promise to perform its undertaking was relied upon by the plaintiff under subsection (c) of the Restatement rule, second, that it is not alleged that any of the improvements proposed by the Inn as a condition of the town's approval were ever actually commenced, and third, that no cognizable duty of care on the part of the defendant has been alleged. Although the federal appellate court decision in Bartolotta raises a serious question as to whether § 324A accurately states the applicable law of this state, the cases in other jurisdictions have held that because "the subsections are phrased alternatively, it is clear that proof of one is sufficient to impose liability." Wissell v. Ohio HighSchool Athletic Assn., 605 N.E.2d 458, 466 (Ohio App. 1992).
It should also be noted that almost all of the reported cases CT Page 465 interpreting § 324A; see, e.g., Waters v. Autuori,236 Conn. 820, 832 n. 8 (1996); inadvertently incorporate a typographical error in the published text of the rule which states that "[o]ne who undertakes . . . to render services to another . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect
his undertaking, if . . . (b) he has undertaken to perform a duty owed by the other to the third person . . .". (Emphasis added.) The reporter for the edition of the Restatement of Torts in which the word "protect" appears has confirmed the fact that its inclusion was a typographical error, and that the phrase should be read as "physical harm resulting from his failure to exercise reasonable care to perform his undertaking . . .". (Emphasis added.) Hill v. United States Fidelity and Guaranty Company,428 F.2d 112, 115 n. 5 (5th Cir. 1970).
The language of the Restatement incorporating the correction noted above clearly contemplates more than a contractual or gratuitous undertaking, because the foundation for the rule stated in § 324A is that the defendant has specifically undertaken to perform the task that is alleged to have been performed negligently. Patentas v. United States, 687 F.2d 707,716 (3rd Cir. 1982). A mere promise made to another to perform a future act without in any way entering upon the performance of that promise does not create a duty of care on the part of the promisor in the absence of reliance upon the promise by the injured third party. Fort Bend County Drainage District v.Sbrusch, 818 S.W.2d 392, 396 (Tex. 1991).
The American Law Institute itself has expressed no opinion as to whether "the making of a contract or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section." Restatement § 324A, caveat (1). The plaintiff asserts that Connecticut case law furnishes no guidance as to this unresolved issue and argues in her brief that in any event she relies on more than a mere agreement to perform in that she has alleged certain affirmative steps that were taken in furtherance of its agreement to improve the intersection.
The plaintiff argues that the issuance of a permit by the department of transportation as alleged in the complaint and the acquisition of an easement from the Inn's property to Spencer Street over a thirty foot right of way after the town's approval of the application constituted "affirmative steps" in furtherance CT Page 466 of its agreement to improve the intersection. It should be noted, however, that the permit is alleged only to have "clarified and confirmed" the Inn's obligation to improve the Spencer Street intersection, and that paragraph 15 of the complaint expressly alleges that the defendant "failed to construct the agreed improvements after it completed construction of its hotel in 1991."
After the adoption of the Restatement rule by the Michigan Supreme Court in 1974; Olkowski v. Aetna, 223 N.W.2d 296, supra; an essential element of a cause of action under § 324A(b) has been that "one must actively undertake to provide the service and duty at issue [and] it must be shown that [the] defendant exercised some action" in order for the rule to come into play.Sexton v. American Aggregates, 231 N.W.2d 449, 452 (Mich.App. 1975). More specifically, where the duty claimed to have been undertaken involves the improvement of a dangerous street intersection, the obtaining of preliminary approvals and permits without any action having been taken to actually perform the work is not sufficient to impose liability on the defendant. Varen v.Bell Telephone Co., 616 A.2d 66, 70 (Pa.Cmwlth. 1992).
Contrary to the plaintiff's assertion that Connecticut case law furnishes no guidance as to the resolution of the question whether a gratuitous promise without performance is sufficient to impose liability, a review of the cases dealing with gratuitous undertakings, including those cited in Bartolotta, show that the issue has in fact been addressed by our Supreme Court. In Zatkinv. Katz, 126 Conn. 445 at 450 (1940), the court held that where "one undertakes to perform an act and performs it negligently" and another person is injured as a result, it makes no difference whether it was performed gratuitously or whether "the motive leading to the performance of the act" was the carrying out of a contractual obligation.
The general rule stated in Zatkin was applied to an undertaking by a landlord to make repairs in which the Court stated that liability could only be imposed "upon the failure of the defendant to exercise reasonable care" in actually performing the obligation that he had assumed of making the repairs necessary to make the area where the injury occurred reasonably safe. Chipman v. National Savings Bank, 128 Conn. 493, 496
(1942). In Palimas v. Aress Realty Co., 130 Conn. 687 (1944), the decision which Judge Timbers cited as a basis for his conclusion in Bartolotta, the Supreme Court reaffirmed the rule stated in CT Page 467Chipman and stated by way of further articulation that "[s]ome negligence in the actual performance of the landlord's undertaking is, however, required if liability is to be imposed" and "[m]ere nonfeasance is not enough." (Emphasis added.) Id. 691.
In addition to imposing the requirement that there must be actual performance of a voluntary undertaking, the Supreme Court in Palimas held that under Connecticut law voluntary repairs made by a landlord do not necessarily give rise to a duty to repair because a landlord's self-interest may prompt him to do many things to his property to protect its value and he does not thereby assume an enforceable duty in favor of his tenant or of a third person. Id. 692. The plaintiff in this case has expressly alleged that the proposed plan for improvements was initiated in order to get the town's approval of its application and under § 324A an undertaking "to render services to another" cannot be established based on actions and conduct which are consistent with an intention primarily to serve one's own purposes rather than to confer a benefit upon another. Smith v. Allendale MutualInsurance Co., 303 N.W.2d 702, 711 (Mich. 1981).
The court's conclusion based upon the foregoing cases is that the allegations of the fifth count do not state a common law cause of action because it is not alleged that the defendant ever commenced the actual performance of its undertaking and that, in any event, its agreement to do so was entirely self-serving and intended for its own benefit rather than for the purpose of rendering services to either the town or the plaintiff as contemplated by the Restatement rule. Nevertheless, the court will consider the plaintiff's principal claim, namely, that she has alleged that the Inn undertook a duty owed by the town to the plaintiff which she claims is sufficient under § 324A(b) "[e]ven where the negligence of the actor does not create any new risk or increase an existing one . . .". Id. Comment d.
The plaintiff in this case seeks to impose upon the defendant a duty to perform what she alleges were "the agreed upon improvements to the intersection [which] were necessary for the protection of the general public" based upon § 324A of the Restatement despite the fact that our Supreme Court has expressly rejected any such theory of liability where recovery of damages is sought against a public official or a municipality and without regard to the indisputable proposition that the enforcement of traffic laws and the promotion of highway safety is primarily, if CT Page 468 not exclusively, a governmental responsibility. In Shore v.Stonington, 187 Conn. 147, 156-57 (1982), the Court refused to impose liability upon a police officer under § 324A because "[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." (CitingAdams v. State, 555 P.2d 235, 246-47 (Alaska 1976) (Connor, J. dissenting) (official responsibility to enforce the law is not an undertaking "to render services to another" as contemplated by § 324A)).
The duty that a police officer owes to the public to enforce the law becomes a special duty to prevent harm to an individual "only in situations `where it could be apparent to [him] that his failure to act would be likely to subject an identifiable personto imminent harm.'" (Emphasis in original.) Romano v. Derby,42 Conn. App. 624 at 627 (1996). Under the rule stated in Shore andRomano, the town owed no duty to the plaintiff, and accordingly the defendant could not have undertaken to perform such a duty within the meaning of § 324A(b) of the Restatement.
Where a plaintiff's claims are grounded solely upon negligence, liability cannot be imposed on the defendant unless the allegations of the complaint establish a cognizable duty of care and "the conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care." Waters v. Autuori,236 Conn. 820, 826-27 (1996). Foreseeability alone cannot be the basis for the existence of such a duty where the plaintiff does not claim that she relied upon or was even familiar with the obligation claimed to have been assumed by the defendant, but was a member of a general and indefinite class of persons. Id. n. 4.
The fact that an owner of land which is being developed for business purposes constructs or is required to construct off-site traffic flow improvements as a condition to its approval by state or local governmental authorities should not of itself be the basis for the imposition of liability "simply because it was required to construct the improvement or pay a part of the construction cost as part of its development approval." MacGrathv. Levin Properties, 606 A.2d 1108, 1113 (N.J. App. 1992). Such a theory of liability would make foreseeability commensurate with duty and "would expose every developer who is so mandated to potential liability, a result we deem to be contrary to the public interest and our sense of fairness." Id. CT Page 469
For the foregoing reasons the defendant's Motion to Strike the fifth count of the complaint is granted.
 II
The defendant has moved to strike the sixth count of the complaint which alleges (¶ 17) that "[t]he driveway servicing the Inn at the intersection at Spencer Street constituted a public nuisance and hazard by reason of its maintenance and continual use in violation of the corrective measures agreed upon by the Inn, and by reason of the danger it posed to motorists, in particular those entering the driveway to its hotel from the eastbound lane of Spencer Street." The defendant claims that the essential elements of a cause of action for public nuisance have not been stated because, first, a street intersection does not have a natural tendency to create danger and inflict injury nor is the use of land for that purpose unreasonable or unlawful, second, the plaintiff was not in the exercise of a public right because the Inn was not a public place where she had a right to be, and third, the defendant cannot be held liable for nuisance where it did not create, maintain or control the intersection where the accident and injury occurred.
"A public nuisance exists if: (1) the condition complained of has a natural tendency to create danger and inflict injury upon person or property; (2) the danger created is a continuing one; (3) the use of the land is unreasonable or unlawful; and (4) the condition or conduct complained of interferes with a right common to the general public." Keeney v. Town of Old Saybrook,237 Conn. 135 at 162-63 (1996). In addition to these essential elements, our Supreme Court has formulated a "functional" test to determine whether a defendant "uses" property in a manner sufficient to subject him to liability for nuisance and "[a] critical factor in this test is whether the defendant exercises control over the property that is the source of nuisance." State v. Tippetts —Abbett — McCarthy — Stratton, 204 Conn. 177 at 184 (1987).
Paragraph 17 of the fifth count does not state that the intersection itself was a nuisance but alleges only (¶ 17) that the "maintenance and continual use [of the driveway to the Inn] in violation of the corrective measures agreed upon by the Inn . . . constituted a public nuisance and hazard" because of the dangers "it posed to motorists" entering the driveway from Spencer Street. Nevertheless, it is clear from the plaintiff's CT Page 470 brief that what she refers to as the "defectively designed intersection" is the nuisance of which she complains, particularly in view of the fact that the complaint omits any reference to "agreed improvements" of the driveway and identifies them only as (¶ 11) the widening and restriping of Spencer Street, the designation of left turns, and the replacement of the existing traffic light with left turn phasing at the intersection.
Ordinarily, an increase in traffic volume which poses additional risks to the safety of drivers and pedestrians does not constitute a condition which has a natural tendency to cause damage and inflict injury for the purpose of determining whether the plaintiff has stated a claim against the defendant for nuisance. Butzgy v. Glastonbury, 203 Conn. 109, 121 (1987). However, in at least one reported case involving a collision between a bicycle and an automobile at an intersection, this court (Rubinow, J.) held that a cause of action could be maintained by a traveler on the highway against an abutting landowner as the result of an activity on his property "that will increase the hazards normally encountered by travelers on the highway, even though there is no tangible invasion of the highway area as a result of the activity carried on by the abutting occupier." Salamone v. Boulanger, 32 Conn. Sup. 115 at 118 (1975).
The court in Salamone also ruled on one of the contested legal issues in this case, namely, whether a person driving or riding as a passenger in an automobile on a public highway is exercising a public right, and concluded that "the plaintiff, as a traveler on the highway, was clearly in the exercise of a public right" for the purpose of stating a cause of action for public nuisance. Id. 116. Judge Rubinow also found that the plaintiff had sufficiently stated the other necessary elements by alleging that the collision was a result of the defendant's installation of a fence with ivy and roses at the intersection where the collision occurred which interfered with the vision of approaching drivers and "constituted an inherently dangerous condition that had a natural tendency, to inflict injury on users of the highway . . .". Id.
The remaining issue raised by the defendant in support of its motion is that it cannot be held liable for nuisance because it did not create, maintain or control the intersection where the accident and injury occurred. Essentially the same claim was made CT Page 471 and ruled upon favorably to the defendants in State v. Tippetts —Abbett — McCarthy — Stratton, 204 Conn. 177 (1987), where the Supreme Court held that although the issue of whether a defendant maintains control over property sufficient to subject him to nuisance liability normally is a jury question there was nothing in the pleadings or the evidence at trial in that case to suggest that the defendants, who designed and supervised the construction of the Mianus River bridge, ever assumed control of the property. Id. 185.
The Court stated that there was nothing to suggest that the state ever relinquished its authority over the bridge, and the highway right of way in which the bridge was included, and that there was nothing in the contract between the parties that "purported to transfer the plaintiff's ultimate control over the bridge construction project to the defendants." Id. 185-86. Although the state delegated to the defendants some of its immediate authority over the bridge's design an(3 construction under the contract, it maintained strict control over the planning and construction of the bridge, while relinquishing only limited responsibility for the project's execution to the defendants Id. 186.
The plaintiff makes the conclusory statement in her brief that she was exercising a public right while traveling as a passenger in the Coda-Klein vehicle which the court accepts as a correct statement of the law based on Judge Rubinow's decision inSalomone v. Boulanger, supra. With respect to the determinative issue of control, however, she states only that the Inn had "assumed control over the highway as an abutter who had contracted with the Town to correct the inherently dangerous characteristics of the highway" without distinguishing the MianusBridge case, supra, and without furnishing a factual basis for that conclusion by reference to the complaint.
The court's review of the complaint shows that there is no factual basis for the plaintiff's conclusion that the defendant had assumed control over the highway other than general references to the "Agreement" and to a permit issued on March 29, 1990 (¶ 14) by the department of transportation in which the finalization of the Inn's obligations is alleged to be "more fully described." Accordingly, what the Supreme Court referred to in State v. Tippetts, supra, 184, as the "critical factor" in applying "a functional test to determine whether a defendant `uses' property in a manner sufficient to subject him to CT Page 472 liability for nuisance" cannot be utilized in this case in order to assist the court in making that determination.
Where it cannot be determined or it cannot be shown that a person created or continued a nuisance or that he owned, maintained or controlled the premises on which it exists, there can be no liability for nuisance. Brunsfeld v. Mineola Hotel andRestaurant. Inc., 456 N.E.2d 361, 367 (Ill.App. 1983). Liability for damage caused by a nuisance turns on whether the defendant was in control over the instrumentality alleged to constitute the nuisance, either through ownership or otherwise. City ofManchester v. National Gypsum Co., 637 F. Sup. 646, 656 (D.R.I. 1986).
For the foregoing reasons, the defendant's motion to strike the sixth count is granted.
 III
The seventh count of the plaintiff's complaint asserts that the defendant is liable to the plaintiff as a third party beneficiary and alleges that "[t]he traveling public, including the plaintiff's decedent, was, and continues to be, a third party beneficiary of the Agreement between the Inn and the Town of Manchester in that the Agreement concerns improvements to be made to a public roadway, which improvements were necessary to correct and make safe a known dangerous intersection especially with respect to those motorists entering the Clarion driveway from the eastbound lane of Spencer Street." The defendant has moved to strike this count on the ground that the plaintiff has failed to allege that the defendant Inn assumed a direct obligation to the plaintiff's decedent.
In order to be a third party beneficiary under Connecticut law, the parties to the contract must have intended that the promisor would assume a direct obligation to the third party.Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325
(1963). This intent is to be determined from the terms of the contract read in the light of the circumstances under which the agreement between the contracting parties was reached including the motives and purposes of the parties. Colonial Discount Co. v.Avon Motors. Inc., 137 Conn. 196, 201 (1950).
In the absence of a manifested intent to the contrary, "construction contracts between a contractor and a state or other CT Page 473 public body for highway repair or construction of a new highway are generally not considered as being for the benefit of third persons, but are, on the one hand, for the benefit of the State in the performance of its duties to maintain highways on behalf of the public, and, on the other hand, for the benefit of the contractor by way of compensation to be paid." Davis v.Nelson-Deppe, Inc., 424 P.2d 733, 737 (Idaho, 1967). Moreover, the nonperformance of a contract duty or nonfeasance on the part of one who contracts to repair a highway does not give rise to tort liability in favor of a third party because his failure to perform his undertaking amounts to no more than a breach of contract and his liability is only to the other party to the contract. McLendon v. T. L. James Co., 231 F.2d 802, 804 (5th Cir. 1956).
The rule stated in Davis v. Nelson-Deppe, supra, has been codified in § 313 of the Restatement (Second) of Contracts based on the rationale that government contracts by definition benefit the public, but individual members of the public are treated as incidental beneficiaries "unless a different intention is manifested [and] a promise to do an act for or render a service to the public does not have the effect of a promise to pay consequential damages to individual members of the public" except under certain limited circumstances. In Miree v. UnitedStates, 249 S.E.2d 573 (Ga. 1978), an action brought by plaintiffs who had been injured in an airplane crash at a county airport, the Georgia Supreme Court stated that governmental exposure to third party beneficiary tort liability "is too broad to permit a contention that every injured party was an intended beneficiary under the public contract in this case." Id. 579.
It should also be noted that in applying the rules of law stated in the above cases, the court's previous findings have a significant bearing on the question of liability under this count, including its ruling that actual performance by the defendant has not been alleged and that its agreement to do so was entirely self-serving and intended for its own benefit rather than for the purpose of benefitting [benefiting] either the town or the plaintiff. Under the circumstances of this case neither of the parties to the agreement could have realistically or reasonably intended to assume a duty of care to the plaintiff or any other passenger, motorist, or pedestrian who might be injured as a result of accidents at the intersection.
For the foregoing reasons the defendant's motion to strike CT Page 474 the seventh count is granted.
 IV
The defendant has moved to strike the eighth count of the plaintiff's complaint which alleges (¶ 7) that the Inn "owned, controlled and maintained the premises known as 191 Spencer Street, Manchester, Connecticut, where it operated a hotel for the accommodation of guests for hire." Paragraph 18 states that the defendant was negligent "in the maintenance of its property and the operation of its hotel business" in that, first, it failed to warn those entering its driveway of the danger of turns across the westbound lane, second, it failed to provide its patrons with an alternate means of entering the premises, third, it failed to suspend the opening of its hotel until the intersection improvements had been completed, and fourth, that it failed "to conduct its business operations in a manner that did not create an unreasonable risk of harm to motorists entering its premises."
The defendant has moved to strike the eighth count because the plaintiff has not alleged that the accident in which the decedent suffered her injuries occurred in an area within the possession or control of the Inn at Manchester. The plaintiff argues that she has stated a cause of action for premises liability and cites the case of Fleming v. Garnett, 231 Conn. 77
(1994) as authority for her claim that her allegations of control and possession do not require any more specificity because the underlying factual circumstances in Fleming were similar to those of this case.
A possessor of land has a duty to conduct its business operations in a manner that does not create an unreasonable risk of physical harm to those outside the premises and his duty may include the duty to warn invitees of conditions that pose reasonably foreseeable dangers to the public. Fleming v. Garnett.supra, 83-84. In Fleming, it was held that the trial court properly instructed the jury that the defendant, who operated a truck terminal adjacent to another such facility, had a duty to warn a driver of the danger of exiting the terminal to enter the highway by means of the adjoining driveway. because the evidence was conflicting as to whether the driver had actual knowledge of the dangerous condition on the adjoining business property.
The extent of the duty owed by an occupier of land abutting a CT Page 475 highway to travelers on the highway, as was stated earlier in this opinion, is not to do anything on that land that will increase the hazards normally encountered by such travelers, even though there is no tangible invasion of the highway area as a result of the activity carried out by the abutting occupier. (Emphasis added.) Salamone v. Boulanger, supra, 118 (citing Housev. Metcalf, 27 Conn. 631 (1858)). If a landowner were to be held to any greater duty with respect to public highways adjacent to his land it would make the line which cuts off landowner liability nearly impossible to draw. Davis v. Westwood Group,652 N.E.2d 567, 570 (Mass. 1995).
Where a motorist is injured while attempting to make a left turn from the highway into the parking lot of a business premises as the result of a collision with a vehicle coming from the opposite direction, the abutting landowner owes no duty to maintain the highway or to warn its users of dangers associated with the highway. Allen v. Mellinger, 625 A.2d 1326, 1328 ( Pa. Cmwlth. 1993). Liability rests with the state if there is a dangerous condition on the highway which caused the accident or with the operator of the vehicle whose negligence caused the plaintiff's injuries. Id.
Where a claim against a business enterprise abutting the highway is not based upon an alleged unsafe condition of the highway but rather on a transient dangerous condition generated by the defendant's own business promotional activities, the business proprietor may have a duty to protect its customers from the hazards of having to cross the adjoining highway from the nearest parking area available to them. Mulraney v. Auletto'sCatering, 680 A.2d 793 (N.J.Super. 1996) (Caterer owed duty of care to plaintiffs who were killed while crossing highway to their car after attending a bridal fair). No such duty exists, however, where the plaintiff's claim of liability is based on a dangerous condition created by the physical layout of the highway or "the system of vehicular and pedestrian control established by the responsible governmental agency." Id. 797.
For the foregoing reasons, the defendant's motion to strike the eighth count is granted.
 V
The ninth count of the complaint states (¶ 18) that "[t]he above complained of acts and omissions of the defendant CT Page 476 Inn at Manchester constitute unfair or deceptive practices in the conduct of trade or business . . . and constitute a violation of the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110aet seq." The grounds of the defendant's motion to strike this count are first, that the plaintiff has failed to establish a sufficient relationship between the parties to support a CUTPA claim, second, the plaintiff has not alleged an ascertainable loss of money or property, and third, that the plaintiff has not alleged sufficient facts to support a finding that the defendant's conduct constituted an unfair or deceptive act or practice.
As a preliminary matter, the fact that a CUTPA claim is being pursued by the decedent's executrix for the benefit of the estate in itself raises an issue that has not been addressed by counsel, but which has been the subject of decisions at the trial court level holding that a CUTPA action abates and is not saved by § 52-599 of the General Statutes, which provides for the survival of actions, because the statute specifically excludes "any civil action upon a penal statute", and our Supreme Court inState v. Leary, 217 Conn. 404 at 416 (1991), characterized CUTPA as a "penal statute", at least for purposes of constitutional review. Medeiros v. Federal Paper Board, 17 Conn. L. Rptr. No. 6, 173 (July 2, 1996); Touchette v. Smith, 10 Conn. L. Rptr. No. 6, 173 (October 5, 1993). The court will not rule on this issue, however, because its resolution depends upon how punitive damages are measured under CUTPA, an issue that also remains unresolved; Langer, Morgan Belt, The Connecticut Unfair Practices Act (1995) § 6.6, pp. 221-22); and because counsel have neither briefed nor argued it.
Section 42-110b(a) of the General Statutes provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110a defines "trade" and "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."
Paragraph 17 of the ninth count states that the "defendant Inn at Manchester was involved in conducting trade or business" within the state, and as previously alleged in ¶ 17 of the eighth count, it operated the premises at 191 Spencer Street as CT Page 477 "a hotel for the accommodation of guests for hire." Paragraph 7 of the complaint states only that the plaintiff was riding as a passenger in the vehicle driven by the defendant, Lynn Coda-Klein, when the vehicle was turning into the entrance of the Clarion Suites Inn which is owned, operated and maintained by the defendant but does not give the reason why the vehicle turned off Spencer Street or whether it was the plaintiff's decision to do so.
A claimant under CUTPA must possess at least some type of consumer relationship with the party who is alleged to have caused her harm, and although privity in the contractual sense is no longer required to give standing to sue, and competitors as well as consumers are protected, "It strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any `trade' or `commerce'." Jackson v. R.G. Whipple,Inc., 225 Conn. 705, 725-27 (1993). The plaintiff's claims are that there is no requirement that the plaintiff's decedent must have been an "actual consumer", and that even though it has not been alleged, she did in fact have a business purpose in mind when the vehicle in which she was riding turned into the driveway, and she also claims that the defendant's agreement to correct the deficiencies in the approaches to the Inn was made in the course of the conduct of its trade or business as required under CUTPA.
Where a plaintiff has neither a business or consumer relationship with the defendant at the time of her injury she cannot be said to have suffered injury as a result and her injuries did not arise out of any such relationship. (Emphasis added.) Skelton v. Chemical Leaman Tank Lines. Inc., 17 Conn. L. Rptr. No. 2, 56, 60 (May 13, 1996). A necessary predicate for recovery under CUTPA is that the defendant caused an unjustified consumer injury and where the underlying claim is grounded on negligence alone it is insufficient to support a CUTPA violation.Williams Ford. Inc. v. Hartford Courant Co., 232 Conn. 559, 593
(1995); see also Robertson v. Stop Shop Supermarket Co., 9 Conn. L. Rptr. No. 16, 485 (September 6, 1993) (Plaintiff's claimed status as a business invitee, rather than a consumer, does not constitute a CUTPA violation).
A "consumer" may be defined as one who purchases and uses products and services as well as one who is "[a] member of that broad class of people who are affected by pricing policies, CT Page 478 financing practices, quality of goods and services, credit reporting, debt collection and other trade practices for which state and federal consumer protection laws are enacted." Black's Law Dictionary (5th Ed. 1979) A plaintiff's status as a "consumer" under such consumer protection laws depends on her relationship to a transaction rather than upon any contractual relationship with the defendant. Schmueser v. Burkburnett Bank,937 F.2d 1025, 1028 (5th Cir. 1991).
Where the term has been defined by statute or through judicial construction under unfair or deceptive trade practices state legislation, it means "an individual who seeks or acquires by purchase or lease, any goods or services, and those goods or services purchased or leased must form the basis of the complaint. Houston v. Mike Black Auto Sales. Inc., 788 S.W.2d 696,699 (Tex.App. 1990). In order to achieve consumer status, the plaintiff who alleges an unfair or deceptive trade practice must show that she. initiated the purchasing process by presenting herself to the seller or service provider with the subjective intent or specific objective of purchasing or using the services and possesses at least some credible indicia of the capacity to consummate the transaction. Martin v. PoliquinEnterprises. Inc., 696 S.W.2d 180, 184-85 (Tex.App. 1985).
The plaintiff in this case, based on the generally accepted definitions used in unfair trade practice cases, has not, and indeed cannot, allege that her decedent, at the time she sustained her injuries, was a "consumer" of the defendant's services as an innkeeper, which was in fact the only "trade or business" in which it was then engaged within the meaning of CUTPA. Moreover, the plaintiff cannot claim that the conduct complained of, namely, its failure to correct the hazardous condition of the intersection, was directly related to its principal business activity rather than being merely incidental to it, or as seems to be the case, totally unrelated to its true business. Arawana Mills Co. v. United Technologies Corp. ,795 F. Sup. 1238, 1253 (D. Conn. 1992); Abely Waste Oil Services. Inc.v. Ravenswood Development Corp. , 15 Conn. L. Rptr. No. 17, 562 (February 5, 1996).
The more recent decisions of this court make it clear that even assuming that a person who brings a claim under CUTPA solely to recover damages for personal injuries is one who has suffered j an "ascertainable loss of money or property" within the meaning of § 42-110g of the General Statutes, a legally sufficient CT Page 479 consumer, competitor, or business relationship must be alleged in the complaint. Edelwich v. 33 Sumner Associates, L.P., 9CSCR 620 (May 19, 1994); Devalle v. Goggins, 18 Conn. L. Rptr. No. 1, 32 (October 11, 1996). The Appellate Court has also recently held that a personal injury suit for damages brought in the guise of a CUTPA claim cannot be utilized to impose upon a trade or business a duty which would ordinarily be an exclusively governmental function, which also appears to be the theory upon which the ninth count of the complaint in this case is based. Suarez v.Sordo, 43 Conn. App. 756 (1996).
For the foregoing reasons, the court finds that the plaintiff has failed to allege a sufficient relationship between Linda M. Mantie, the plaintiffs decedent, and the Inn at Manchester to support a CUTPA claim.
Accordingly, the defendant's motion to strike the ninth count of the complaint is granted.
Harry Hammer Judge Trial Referee