JAMES LEWIS *v.* I. M. SHAPIRO COMPANY, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 3—decided July 12, 1945.

*Michael V. Blansfield,* with whom was *Harry M. Albert,* for the appellant (named defendant).

*Walter E. Monagan,* with whom was *A. Henry Weisman,* for the appellee (plaintiff).

BROWN, J. In this action for damages for personal injuries sustained by the young plaintiff when a brick wall fell upon him by reason of the alleged negligence of the named defendant, hereinafter called the defendant, he had judgment and the defendant has appealed. The material facts found by the court, with the corrections to which the defendant is entitled, may be thus summarized: Brookside Dairies, Inc., operated a plant on its land in Waterbury which fronted westerly on South Leonard Street and at the rear abutted land of the New York, New Haven and Hartford Railroad Company. Opposite the rear of the dairy company's property on the east side of the railroad land was the house where the plaintiff lived, fronting on Lafayette Street. There was a brick wall six feet high and about eight inches thick on the dairy company's land along the entire fifty feet of its east boundary line. Adjoining the east face of this wall, for its whole length and fifteen feet beyond to the north, was a freight loading platform six feet wide and three and

one-half feet high. This was located on the railroad's land and was served by the most westerly of the three sidetracks in its right of way at that point. The understructure of the platform consisted of heavy cross-braced timbers and its floor was made of sheets of steel fastened to the woodwork by lag screws. The brick wall had become dilapidated and was leaning to the east so that its top was six inches over the west line of the railroad land. The resulting pressure of the wall forced the platform so close to the track that the railroad requested the dairy company, which had the right to use the platform, to remedy the condition. Accordingly, the dairy company contracted with the defendant for the removal of the platform with its supports and for the erection of a new wall in place of the old in accord with plans and specifications prepared by the dairy company's engineer. The only provision of the contract relative to the platform and old wall was that they should be removed by the defendant, no manner or method being mentioned.

The defendant commenced work under the contract on April 4, 1940, and did no further work until the morning of April 8, 1940. At that time, it had removed some brick from the top of the wall, part of the steel platform and some of the supporting posts and stringers. These were left nearby on the railroad land. About 8:30 in the morning, on April 8, the plaintiff, who was eleven years of age, started from his home on Lafayette Street to go to school by following the course which adults and children alike were accustomed to use. This led west across the railroad tracks, and thence over the property next south of the dairy company's land, at a point within a very few feet of the southerly end of the platform, to South Leonard Street. Several other persons also crossed both on April 4 and April 8. Seeing the defendant's men at

work taking down the platform near its northerly end, the plaintiff went over to watch them. He saw another boy pick up some wood and, upon request made to one of the defendant's workmen, was told that he might have some. He thereupon picked up one or two pieces from the ground, carried the wood across the tracks and threw it down the embankment from the railroad right of way into the backyard of his home. He then resumed his way to school.

Because of rain the defendant's workmen quit work at 10 o'clock that morning and left the premises. Before doing so, they had dug excavations at intervals of six feet along the west face of the wall to remove the concrete foundations of the posts of a fence which had stood close to it. By their removal of a portion of the platform, as recited above, the defendant took away the only extraneous support there was to keep the wall from toppling over. Notwithstanding this, its employees departed without taking any measure by shoring or otherwise to guard against the contingency. At about 11:30 a.m., the plaintiff, who was on his way home from school by the same path, observed people removing wood from the railroad tracks in the vicinity of the wall where the men had been at work. Joining them, he stooped to pick up a piece from the tracks and had his back to the wall when it fell upon him, causing the serious injuries complained of.

Upon these facts, it is clear that the conclusions of the court to the following effect cannot be disturbed: The plaintiff was not guilty of contributory negligence and did not in any manner bring about his own injuries; the plaintiff was not a trespasser as to the defendant; the defendant caused the condition of the wall to become dangerous and failed to secure it properly by shoring or other protective methods and to

give any adequate warning of the danger so created. The gist of the court's further material conclusions was that the defendant assumed control of the razing of the wall and platform and this control continued until after the plaintiff's injury; that the defendant knew, or in the exercise of due care should have known, that people were using the railroad's right of way in the vicinity of the wall, and that they were likely to be injured by its dangerous condition, which the defendant had created; that the defendant's conduct constituted negligence; and that this negligence was the sole proximate cause of the injuries to the plaintiff.

As the finding shows, the defendant was doing the work on the wall and platform as an independent contractor for Brookside Dairies, Inc. Since no claim of liability of the Brookside corporation is involved, its contract with the defendant is significant only as establishing that the work was being done with that company's consent and approval, and as bearing upon the issue of control. While the defendant, because of rain, had suspended work an hour and a half before the plaintiff was hurt, the finding shows that the performance of its contract was far from completion and contains no facts which indicate that the work had been turned over to and accepted by the Brookside corporation, either formally or by conduct. Therefore the court's conclusion that control continued in the defendant until after the plaintiff's injury was correct. *Mann* v. *Leake & Nelson Co.*, 132 Conn. 251, 254, 43 Atl. (2d) 461.

The court's express finding is that "not only the children but the grown persons in the neighborhood were accustomed to cross the railroad tracks to go from Lafayette Street where the plaintiff lived to South Leonard Street, the next street west and in so doing

passed along the railroad tracks near the platform and the property of the Dairy Company"; that "Several persons crossed the railroad company's tracks in the vicinity, not only on the 4th of April, but also on the 8th of April, 1940, when the plaintiff was injured"; that three hours before the accident the plaintiff himself, with the express permission of one of the defendant's workmen, and another boy were picking up wood where the men were at work; and that at the time he was hurt there were a number of persons there besides himself removing the wood. Facts found and earlier recited herein established that danger from the fall of the wall to persons in such proximity to it was manifest. Under these circumstances, before leaving the wall in the condition it was in, the defendant was bound to consider whether or not persons would thereby be subjected to danger, and, if it did consider that, it should, as the trial court concluded, have anticipated their presence. The conclusion that the defendant's conduct was the sole proximate cause of the plaintiff's injury must stand. Whether it constituted negligence depends upon what duty if any, the defendant owed the plaintiff.

Although we have not had occasion to decide a case upon a factual situation identical with the one here, where an independent contractor's claimed negligence in dealing with a structure or instrumentality upon land of his contractee has injured a third person upon land of an adjoining owner, we have determined the question of liability upon situations sufficiently analogous to involve the general principle determinative of the defendant's duty in this case. Thus, where a defendant gas company's employee, with the consent of the plaintiff, used a trap door to descend into her cellar to read the gas meter and by his negligence in leaving

the trap door open caused her to fall into the cellar, and suffer injuries, we said that "the essential basis of negligence is a reasonable anticipation of the likelihood of danger arising from the conduct which caused the injury," and again, that "One who assumes control of an instrumentality is bound to exercise due care in his use of it." *Hayes* v. *New Britain Gas Light Co.*, 121 Conn. 356, 359, 360, 185 Atl. 170. The application of these principles is also well exemplified in cases where a plaintiff on the public highway was injured by the negligence of a defendant in the maintenance of structures upon abutting property controlled by him; *Thelin* v. *Downs,* 109 Conn. 662, 667, 145 Atl. 50; *Young* v. *Talcott,* 114 Conn. 675, 678, 159 Atl. 881; *Kane* v. *New Idea Realty Co.*, 104 Conn. 508, 515, 133 Atl. 686; and where the plaintiff was injured by the negligence of the defendant in creating a condition, incident to authorized repairs made by it in the highway, rendering the road dangerous to travelers who used it. *Trasacco* v. *New York, N. H. & H. R. Co.*, 113 Conn. 355, 362, 155 Atl. 493. In such cases, where the injury to the plaintiff does not occur on the property of the defendant, liability does not depend essentially upon the defendant's duty as owner but rather upon the duty which arises from the fact that he has control of the structure or instrumentality causing the injury. See *Bernardo* v. *Hoffman*, 109 Conn. 158, 161, 145 Atl. 884. So, in this case, no question is involved of any jural relation between the plaintiff and the defendant consequent upon the latter standing in the shoes of the owner, Brookside Dairies, Inc. As the court properly found, the plaintiff was not a trespasser as to the defendant. This being so, the principles quoted above are properly determinative of the defendant's duty to the plaintiff. Therefore the court's

conclusion that the defendant was negligent cannot be disturbed.

There is no error.

In this opinion the other judges concurred.