JENNIE CORVO ET AL. *v.* CITY OF WATERBURY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued October 13—decided December 8, 1954

*Michael A. Ciano,* for the appellants (defendants Silverino and DiMasi).

*Francis McDonald,* for the appellants (defendants Festa).

*Philip N. Bernstein,* assistant corporation counsel, with whom were *George J. Crocicchia,* corporation counsel, and, on the brief, *Thomas F. Minuto,* for the appellee (named defendant).

*Michael V. Blansfield,* with whom were *Morton S. Kramer* and, on the brief, *Irving W. Pasternak,* for the appellees (plaintiffs).

DALY, J. The plaintiffs brought this action to recover damages for injury to their property, alleged to have been caused by the defendants through their maintenance of a nuisance and their failure to maintain and repair a retaining wall. The defendants Vincenzo Festa, Antonette Festa, Antonio Silverino and Anthony DiMasi, hereinafter called the defendants, filed counterclaims in which they sought equitable relief. They claimed that they were entitled to have their land supported and that the failure of the plaintiffs and of the defendant city of Waterbury to furnish the required support violated a legal duty imposed upon them.

The pertinent facts are as follows: The plaintiffs were the owners of land and a three-family dwelling house at 54 French Street in Waterbury. The premises owned by the defendants were to the rear of, and substantially higher than, the plaintiffs' property. They were located on the southerly side of Grove Street. Between them and the plaintiffs' property there was a wall approximately sixty feet high. The Festas owned and lived on the premises known as 345-347 Grove Street. DiMasi and Silverino owned the property at 339-341 Grove Street. Originally, a passway divided the French Street lots from the lots now owned by the defendants. This passway, 20 feet wide, extended 200 feet east from Gilbert Street, which runs north and south and at an angle to French Street. The passway was reserved in 1853 by Isaac Baldwin, who owned all the property and was then dividing it into lots. When the Festa and DiMasi-Silverino houses were built, the only access

to them was through the passway. After 1891, however, the main entrance to these houses was from Grove Street. In 1921 the owners of the land eventually acquired by the Festas took down a small wall back of their property and erected a retaining wall. Sixty feet high, this retaining wall was on the passway; it was north of the land subsequently purchased by the plaintiffs, and south of that now owned by the defendants. It was built to prevent the higher land from disintegrating and sliding down onto the lower land. It also served as the southerly boundary line of the back yards of the properties now owned by the defendants, and it was considered by the plaintiffs to mark the northerly boundary of their property.

After the wall had been built, the then owners of the Festa land filled in dirt north of the wall and put a fence on top of it. Ingress to and egress from the passway was thus prevented. A veranda was built so that it extended into the passway in a southerly direction toward the wall. The filled-in land, between the house and the wall, was utilized for the planting of flowers, trees and grapevines and served, at the time of trial, as a rear yard for the Festa property. The predecessors in title of the defendants DiMasi and Silverino built upon the passway a dry wall which joined with the high wall maintained by the Festas. This completely inclosed the passway and cut off access to it. The land so inclosed became the back yard of the property of the defendants DiMasi and Silverino. They have used the area north of the wall as a garden for themselves and their families. They have continually used the land from their house to the wall as their own and have asserted and maintained control of the inclosed passway. It was impossible to determine, at the time of trial, with

any degree of certainty who had title to the twenty-foot strip originally used as a passway. The defendant city was never the owner of it, nor was it ever accepted as a public highway.

On December 31, 1948, a part of the wall behind the defendants' property gave way, sending dirt, boulders and other debris into the back yard and house of the plaintiffs. A dry wall which stood on the plaintiffs' property seven feet north of their house remained intact, but upon orders from the fire marshal the plaintiffs employed a contractor and had this wall braced in order to safeguard the lives of those living in their house. The removal of the dirt and rocks, the work ordered by the fire marshal as a protective measure, and the repair of the damage to the plaintiffs' house cost $569.31. Part of the retaining wall remained standing, but it had become so cracked that its condition was dangerous and a menace to the plaintiffs' safety.

The court concluded that the defendants have used, maintained and asserted ownership of the land up to and including the wall south of their premises; that they have asserted and maintained control of the inclosed passway; that they were using the property north of the wall for their exclusive use and were liable for the repair of the wall; that they, having taken possession of the land burdened with the wall, were charged with the maintenance of the artificial structure; that they, in controlling, maintaining and asserting ownership of this land, have permitted surface water to flow from their premises in a manner different in volume and course from its natural flow and have weakened the already overburdened land, causing the wall to give way; that they were liable for permitting and allowing the dirt, stones and debris to wash onto the plaintiffs' land, causing dam-

age; that they failed to keep the retaining wall in proper condition and repair; that they were not entitled to prevail on their counterclaims; that the existing condition constituted a nuisance; that the plaintiffs were entitled to recover $569.31 in damages from the defendants and to obtain equitable relief requiring them to rebuild and repair the retaining wall so as to provide adequate support and to prevent foreseeable future damage; that no liability attached to the city of Waterbury and it was entitled to judgment; and that all equitable considerations favored the position of the plaintiffs.

In the assignment of errors the assertion is made that the court erred in refusing to find many facts claimed to have been admitted or undisputed. A fact not contradicted does not necessarily become an "undisputed" fact which is required to be added to the finding. The trial court is the final judge of credibility and may disbelieve a witness as to part of his testimony and accept it in other respects. *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358; *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 730, 97 A.2d 562; *Armstrong* v. *Watrous,* 138 Conn. 127, 129, 82 A.2d 800; *Neville* v. *Yaknunas,* 132 Conn. 627, 630, 46 A.2d 342; *Cishowski* v. *Clayton Mfg. Co.,* 105 Conn. 651, 655, 136 A. 472; Practice Book § 397. Many claims are made, in the assignment of errors, that the court erred in finding facts without evidence. None of the relevant facts contained in the finding were found without evidence.

The defendants, who are the appellants, maintain that they were not the owners of the passway and consequently were not liable. They claim that the defendant city of Waterbury was the owner of it and, not having abandoned it, had the obligation of keeping the wall on it in proper condition and repair.

Although the trial court correctly found that the city was never the owner of the passway, the defendants, on the facts found, would have been liable even if the city had been the owner. The court justifiably concluded that the defendants asserted and maintained control of the inclosed passway, including the retaining wall. "One who asserts and maintains control of property may be liable for defective conditions existing thereon though he have in fact no title to it." *Thelin* v. *Downs,* 109 Conn. 662, 668, 145 A. 50; *Lewis* v. *I. M. Shapiro Co.,* 132 Conn. 342, 348, 44 A.2d 124; *Hayes* v. *New Britain Gas Light Co.,* 121 Conn. 356, 360, 185 A. 170; *Ziulkowski* v. *Kolodziej,* 119 Conn. 230, 234, 175 A. 780; *Skelly* v. *Pleasure Beach Park Corporation,* 115 Conn. 92, 97, 160 A. 309. It did not matter that the defendants had no title to the passway.

It is also asserted that, if the city of Waterbury abandoned the passway, the plaintiffs, as the owners of the land adjoining it on the south, became the owners of the southerly half of that part of it which abutted upon their land, and were required to keep the wall upon that part of the passway in repair. The trial court having found that the passway was never a highway and that the city never had claimed any interest in it, there could not have been an abandonment of the passway by the city resulting in the plaintiffs' becoming the owners of part of it. *Wambeck* v. *Lovetri,* 141 Conn. 558, 562, 107 A.2d 395; *Goodwin* v. *Bragaw,* 87 Conn. 31, 37, 86 A. 668; *Seery* v. *Waterbury,* 82 Conn. 567, 571, 74 A. 908.

The court did not err in concluding that the four individual defendants were liable for the defective condition of the retaining wall. In view of the facts found, we cannot say that the court erred in deciding that no liability attached to the defendant city of

Waterbury, and in not finding the issues for the four individual defendants upon their counterclaims.

There is no error.

In this opinion the other judges concurred.