CHRISTINE C. HENRIQUES ET AL. *v.* GODFREY S. ROCKEFELLER ET AL., TRUSTEES (ESTATE OF WILLIAM G. ROCKEFELLER), ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued May 3—decided June 27, 1961

*Robert C. Bell, Jr.,* and *John Keogh, Jr.,* for the appellants (defendant trustees).

*Morgan P. Ames,* with whom, on the brief, was *Robert W. Worley, Jr.,* for the appellees (plaintiffs).

BALDWIN, C. J. The plaintiffs own homes in Deer Park, a residential development in Greenwich. The land in this development was originally owned by William Rockefeller, who conveyed it in 1908 to his two sons, William G. and Percy A. Rockefeller. William G. Rockefeller died in 1922, and Percy in 1933. They left their respective interests in this real estate in trust, and the trustees are defendants. The development of Deer Park began in 1925 or 1926. The land was divided into forty-seven parcels, and private roads were laid out. Between 1926 and 1933, parcels were deeded to purchasers by Percy A. Rockefeller and the trustees of the estate of William G. Rockefeller. After the death of Percy, the deeds were by the trustees of both estates.

A "Plan of Sewers, Deer Park, Greenwich, Conn.," made in 1928, shows a sanitary sewer running south from a public highway known as North Maple Avenue through Midwood Road, a private road in Deer Park, for a distance of 1500 feet. The sewer then leaves Midwood Road and crosses, in a

southwesterly direction, lots 2, 3, 4, 5 and 6. On lot 6, the sewer is joined by one which runs in a southerly and easterly direction through the westerly part of Deer Park. The consolidated line runs southerly through another private road in Deer Park to Perryridge Road, where it joins the public sewer system of Greenwich. Lateral sewers in the area connect with the aforesaid lines. This private sanitary sewer system was constructed when the development of Deer Park began in 1925 or 1926. The sewer pipe throughout is eight inches in diameter, which is inadequate. Where lots 2, 3, 4, 5 and 6 are crossed, the grade of the sewer is one-tenth of one per cent, which makes the flow so slow that the sewage will not run off. In some places, the sewer is laid too close to the surface and the pipes have become broken. The system has fallen into disrepair. Between 1926 and 1956, parcels in Deer Park were sold by the defendant trustees or their predecessors for home construction. A number of property owners outside the park were permitted to connect with the sewers of Deer Park. The tie-ins, inside and outside the park, have overloaded the system. This, the original faulty construction, and lack of repair have produced a nuisance which interferes with the plaintiffs' enjoyment of their homes. Beginning in the late 1940's and early 1950's, a serious offensive condition developed on the lots crossed by the sewers.

At the time this case was tried, the defendant trustees owned no parcels of land, having sold the last one in 1956. The sewers and the streets in which they were laid have never been conveyed to the town of Greenwich, dedicated, or accepted by the town, although the property owners within Deer Park have been assessed by the town for maintenance

charges arising out of the connection of this private sewer system with the public sewer system and disposal plant. The deeds from the defendant trustees and their predecessors contain a provision that the grantee agrees to pay his portion of the expenses of maintaining and keeping in repair the ways and avenues and sewer system, fire hydrants and other such improvements, the proportion of such expenses which each landowner is to pay to be assessed, on the basis of the grand list valuation, at such rate as produces, on the valuation of all the real estate in the development, an amount sufficient to meet the expenses incurred, "until said roads have been turned over to an association of property owners if it so meets with their approval or until such roads become public highways." The deeds to lots 2, 3, 4, 5 and 6, crossed by the sewer system, contain a provision "reserving and excepting to the grantors, their heirs, successors and assigns, the right to use, lay and maintain a sewer line through a portion of the above described premises, and the right to repair, replace and remove the same, and the right to enter upon the above described premises at all reasonable times for the aforesaid purposes." Each parcel in the development is bounded on a private road, and the deed gives to the grantee the right to use the roads and existing sewers in common with other property owners in the park.

The court concluded that the title to the private roads was retained by the trustees, that the right reserved by them to lay and maintain the sewers and to enter upon private property for that purpose connotes a correlative duty to lay the sewers properly and to keep them in repair, and that there was no dedication of the sewers to the public and no

acceptance thereof by the town. The court rendered judgment against the trustees and enjoined them to abate the nuisance by making the repairs or replacements in the sewer system reasonably necessary for its proper operation. The trustees have appealed.

The expressed intention of the deeds from the defendant trustees and their predecessors to the plaintiffs and other purchasers of parcels in Deer Park is to be found in the language of the deeds, interpreted in the light of the situation of the parties to them and the circumstances under which the deeds were made. *Buckley* v. *Buckley,* 144 Conn. 403, 409, 133 A.2d 604; *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427. It was necessary for the trustees and their predecessors, in developing Deer Park, to retain control of the roads and sewers. The deeds bounded the parcels sold on private roads; the grantees acquired, by the express terms of the deeds, only the right to use the roads, the grantors retaining the fee to them. *Wambeck* v. *Lovetri,* 141 Conn. 558, 562, 107 A.2d 395, and cases cited. Likewise, the deeds gave to the grantees only the right to use the sewers in common with others. The deeds to the lots crossed by the sewer system reserved to the grantors the right to enter upon them "to repair, replace and remove" the sewers. Between 1926 and 1956, the defendant trustees and their predecessors permitted persons outside Deer Park to tie into its sewer system. The language of the deeds and the circumstances under which they were given, as well as the conduct of the parties to them during the development of Deer Park, clearly manifest the intent that the defendant trustees and their predecessors would, as they did, retain control of the streets and the sewers. One who asserts and maintains control

of property is liable, under proper circumstances, for defective conditions existing thereon. *Corvo* v. *Waterbury,* 141 Conn. 719, 725, 109 A.2d 869, and cases cited.

The court found that the sewer system had been improperly constructed in that the pipe was too small and the gradient insufficient. The result was overloading. The system had become defective before 1956, when the last parcel in the development was sold by the trustees. The neglect by them and their predecessors to construct a proper sewer system and to keep it in repair created the nuisance of which complaint is made. See *Bush* v. *Norwalk,* 122 Conn. 426, 428, 189 A. 608; *Swift & Co.* v. *Peoples Coal & Oil Co.,* 121 Conn. 579, 588, 186 A. 629, and cases cited; *Stoto* v. *Waterbury,* 119 Conn. 14, 17, 174 A. 189; 66 C.J.S. 838, § 83. The defective construction of the system and its disrepair had a continuing and inherent tendency to cause harm long before 1956, when the trustees sold the last parcel in Deer Park. See *Carabetta* v. *Meriden,* 145 Conn. 338, 339, 142 A.2d 727, and cases cited. Under all the circumstances, the defendant trustees and their predecessors were, as developers of Deer Park, in no better position than a municipality would be under similar circumstances. The trustees are in duty bound to abate the nuisance. *Judd* v. *Hartford,* 72 Conn. 350, 354, 44 A. 510; *Leary* v. *Manchester,* 90 N.H. 256, 257, 6 A.2d 760; *King* v. *Granger,* 21 R.I. 93, 96, 41 A. 1012; *Richmond* v. *Cheatwood,* 130 Va. 76, 83, 107 S.E. 830; *Boyer* v. *Tacoma,* 156 Wash. 280, 283, 286 P. 659. It would be unconscionable to permit them and their predecessors to benefit from the sale of forty-seven parcels of land in Deer Park and escape liability for the nuisance they created on the claim that they had

660

sold the last parcel and had no further interest in the development.

It is true that the purchasers of land in Deer Park agreed to an assessment against their property for the cost of the maintenance and repair of the streets and sewers. But they have not agreed to undertake the initiation of this task. That responsibility devolves upon the trustees until, as provided for in the deeds, the property owners, in an association, are willing to assume the responsibility or the streets and sewers are accepted by the town of Greenwich. Whether, if repairs are made by the trustees, the property owners will be required to submit to assessments is a matter we are not called on to decide now.

. The trustees claim error in the admission of the testimony of an expert title examiner to the effect that the deeds did not convey a fee in the streets but only an easement of way. If there was error in the admission of the testimony, it was harmless, since the opinion expressed by the title examiner accords with the correct interpretation of the deed.

There is no error.

In this opinion the other judges concurred.