[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MILLS DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This case is based on allegations by the plaintiffs that they suffered damage to their health as a result condition of the building in which they worked. The defects alleged for the purposes of this motion involve an allegedly defective heating, ventilation, and air condition system, HVAC. The defendants who have now filed this motion for summary judgment are various individuals doing business as G.M. Associates and will be referred to as the Mills defendants. The defendants can be considered landlords or lessors of the premises where the plaintiffs worked and the plaintiffs were employees of CT Page 1111 Gravymaster Company, an intervening plaintiff.
A series of briefs have been filed by both sides. Issues that have been raised include a claim by the defendants that the plaintiffs cannot, as employees of the lessee, Gravymaster, sue the lessor Mills defendants. The plaintiffs contest this position and claim that the Mills defendants retained control of the premises on which the injuries occurred and, in any event, that they should have a claim against the Mills defendants under the public use and latent defect exceptions to the general rule of lessor nonliability where the lessor is not in possession of the rented premises. The court, in its discussion, will refer to the facts throughout its decision as that becomes necessary.
 A.
Possession or control of premises is the legal basis of liability so that a landlord out of possession is normally not liable to persons injured on the rented premises. A landlord would be liable to the tenant or persons on the property with the tenant's permission for injuries caused by a dangerous condition negligently allowed to exist on parts of the leased property retained in the landlord's control but which the tenant is entitled to use. Restatement 2d of Property: Landlord and Tenant, § 17.3; Douglas v. 95 Pearl Street Corporation,157 Conn. 73, 82 (1968); Dinnan v. Jozwiakowski, 156 Conn. 432, 434
(1968).
In this case the plaintiff's claim to have suffered injuries and damage to their health due to the so-called "sick building syndrome". Medical reports submitted by the plaintiffs indicate that there was an excessive level of carbon dioxide in the office where these women worked due to a lack of fresh air being pumped into this area. The cause of this is said to be the result of the defective design of the heating and air conditioning system. For purposes of this motion only, the defendants do not contest the findings of these reports which have been attached to one of the plaintiffs' reply briefs to the defendants' motion for summary judgment. Also, this issue is not analytically related to a separate question in this case arising from the fact that the landlord installed the heating and air conditioning system, which raises the problem of whether the landlords here might still be liable even if they did not retain control of the premises as such after the leasehold interest began. But discussion of the exceptions to lessor nonliability because of CT Page 1112 concealed latent defects and the so-called public use exception need not be reached if in fact the lessor had control of a portion of the premises containing the injury-producing dangerous condition.
What "control", if any, did the defendants retain in this case — at least based on what has been submitted for this summary judgment motion? And what do the cases mean when they say "control" in this context?
Control is a practical issue. Dangerous conditions cause injuries to people which the law has an interest in preventing. That party who has control of the premises and the dangerous condition on the premises or a portion of the premises should bear the responsibility of correcting it. Control carries with it the responsibility to correct the condition and ascribes fault when the responsibility is not lived up to.
In this case the defendants leased the entire building to the plaintiffs' employer, Gravymaster, and the lease provided that the premises could be used only for that company's manufacturing business and offices. Gravymaster was responsible for all taxes and assessments and for "all repairs to the demised premises ordinary and extraordinary, structural as well as non-structural, foreseen as well as unforeseen." Gravymaster, at its own cost, "must" arrange with contractors to maintain the air conditioning system. That company also had to insure the building for its replacement cost and maintain liability insurance for the defendant lessors. Gravymaster also had to reimburse the defendants for all expenses and liability incurred by the defendants as a result of Gravymaster's use and occupancy of the building. Based on these factual allegations which the plaintiffs do not contest by, for example, referring to other portions of the lease, the defendants claim they were out of possession landlords. Under our common law, if they can be characterized as such, they would not be liable absent some exception to the common law rule.
The plaintiffs seek to rebut the defendants' position by referring not to the lease itself but by, in effect, arguing despite the language of the lease "the building was not a wholly demised premises, in that the movants used and controlled the same areas where the plaintiffs were injured." (Brief of 7/2/96). It is defacto control that should be important not whether some lease or deed transfers title to others. Cf. State v.CT Page 1113Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 184 (1987);Henriques v. Rockefeller, 148 Conn. 654, 658 (1961).
What do the plaintiffs claim indicates that the plaintiffs had defacto control of the premises during the period of the tendency?
(1)
The defendants performed the initial construction of the building and installed the HVAC system in 1987. They also installed the HVAC system on a new expansion built during the year 1987-1988. The plaintiffs have submitted certain medical records to the effect that the HVAC system did not allow fresh air into the work space of these plaintiffs and the defective nature of the HVAC system caused the plaintiffs to suffer serious illness.
The fact that a landlord constructed the building and its operational systems which was later leased or even installed a HVAC system in an addition to the original leased premises while the lease was still running does not mean the landlord has "control" of the premises. If that were the case, a lessor who constructed the building would always have control and be responsible for any dangerous condition. That does not appear to be the present law in our state. As late as 1962, our court said: "Ordinarily, a tenant takes the demised premises as he finds them, and the landlord is not liable for defective conditions . . . within the demised area." Masterson v. Atherton,149 Conn. 302, 306 (1962. Also see Smith v. Housing Authority,144 Conn. 13, 16 (1956). That does not mean that the lessor cannot be held liable under some exception to the common law rule such as the public use or latent conditions defect. But it must mean if the rule of landlord nonliability is to remain operative, that once a building or one of its components is constructed and it is turned over to the lessee by the terms of the lease, then caveat emptor operates. The harshness of this result is mitigated by the various exceptions to the landlord nonliability rule. Some states have even abandoned the caveat emptor rule of landlord nonliability and have held that lessors must be charged with reasonable care not to subject others to an unreasonable risk of harm and must act as reasonable people under all the circumstances including the likelihood of injury to others, the probable seriousness of such injuries and the burden of avoiding the risk. Sargeant v. Ross, 308 A.2d 528 (NH 1973). According to CT Page 1114 the rulings of our appellate courts that is not our law. Although the fact that a lessor built or had built the condition which is dangerous may have certain implications in the application of the latent defect exception to the lessor nonliability rule, this does not mean the rule can be abandoned ab initio once that fact is established under the guise that this shows landlord "control". In other words, if a landlord constructed a condition which is dangerous and the condition causes injury, the landlord is not liable because the construction of the condition gives the landlord "control" over the demised premises. The landlord would only be liable if the condition so constructed was "latent" vis-a-vis the tenant and if the other requirements of that exception are met. In that sense, whether the landlord constructed the latent condition is irrelevant to the issue of "control" as such — caveat emptor intervenes — but it may have some bearing at least in an evidentiary or burden-shifting sense on determining whether the requirements of the latent defect exception are met (of which, more later).
(2)
But the plaintiffs further argue that the defendant lessor had defacto control of the office area in which they worked. The area where the plaintiffs worked was used and "controlled's by both the defendants and Gravymaster. They claim the transcript of John Mills, Sr., indicates that the defendants controlled and utilized the same officer spaces as their tenants Gravymaster, Inc." (Brief of 7/2/96). The deposition testimony of Mr. Mills, Sr., indicates that G.M. Associates (the Mills defendants for purposes of this discussion) had office space in the area of the new addition; the same office area where the plaintiffs worked. G.M. Associates had its files in this area. And apparently G.M. Associates' officers had office space in this area. The complicating factor here is that Gravymaster and G.M. Associates shared common officers and G.M. Associates, according to Mills' testimony, was the entity that decided to "put the two operations together in the same building" where the plaintiffs suffered their injuries. But the plaintiffs have made no claim and have offered no evidence to explicitly establish that the corporate veil should be pierced here and/or that G.M. Associates and Gravymaster are in effect the same entities for the purposes of deciding the issue of control for tort liability purposes. The court, based on the record presented, has to regard these companies as two separate entities. CT Page 1115
That being the case, the plaintiffs' position appears to be that the Mills defendants, acting through G.M. Associates, had de facto control of the premises because they, as lessors, ran their business or some portion of it and kept their files in a portion of the building they had leased out to Gravymaster, Inc. and where the plaintiffs worked.
But these bare facts alone do not establish "control" of the premises. The provisions of the lease still give Gravymaster an unqualified leasehold premises in the entire building. The Mills defendants had no obligation to make repairs or maintain any system in the building. They did not pay for insurance or any taxes or assessments on the building. The lease did provide that the leased premises could only be used for Gravymaster operations. But if in fact Gravymaster did permit G.M. Associates to maintain some operations at the premises then, strictly speaking, since Gravymaster had the lease, G.M. Associates, based on the bare facts here, would be little more than some kind of licensee permitted by Gravymaster to use some office space. Under the terms of the lease, the right of possession remained in Gravymaster. No facts have been presented beyond the mere occupation of office space that the Mills defendants controlled the operation of the office area, cf. Reynolds v. Van Buren,49 N.E. 763, 764 (NY 1898), facts are not strictly on point but case does distinguish between mere license to use portion of premises and actual control. In Edwards v. Neely Oil Co., Inc.,556 S.W.2d 114 (Tex. 1977), the defendant company leased land from another defendant, Morgan. The company then leased the land back to Morgan under a lease whereby Morgan agreed to sell some of the defendant company's products. Morgan had some work done on the heating system of one of the leased buildings, a gas station. An explosion occurred resulting in someone's death. Summary judgment was granted for the defendant Neely company because the court found that the evidence established the company did "not have the right to exercise and did not actually exercise control over the manner or details of the operation of the station." Id. p. 115.
The same appears to be the case here — all we have established by the evidence is a permitted use of office space by the lessee of premises over which, by the terms of the lease, it was given control.
Furthermore, the plaintiffs claim is based on the defective construction of the HVAC system which allegedly caused them injury. But after the demised premises were turned over to CT Page 1116 Gravymaster, the Mills defendants had no duty to repair or maintain the HVAC system under the terms of the lease and Gravymaster was responsible for ordinary maintenance of the HVAC system. The fact that after the term of the lease began the Mills defendants used office space or kept files in a portion of the premises they leased to Gravymaster does not mean that during theterm of the lease they had the right to exercise nor has any evidence been presented that they in fact exercised any control of the HVAC system which is alleged to be the injury-causing agent
Section 17.3 of Restatement 2d Property: Landlord and Tenant discusses landlord liability for "harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control." Under the terms of this lease, the fact that Mills defendants, acting as G.M. Associates, controlled a certain portion of an office area to carry on their business, even if that is assumed, did not give them the obligation let alone the right to maintain or repair the HVAC system.
In summary, this case appears rather unique and the court has found no case directly on point. But comment (a) to § 17.3 does state as to the rule imposing liability on a landlord for conditions on a part of the premises still controlled by the landlord — "the rule stated in this section does not apply to any part of the leased property specifically transferred to the tenant under the lease with regard to which the landlord retains a right to inspect, to repair, or to enter for some other purpose. These parts of the leased property are not considered to remain under the landlord's control."
The situation here is analogous; the lease specifically transfers this office area to the lessee's control and all we have is permissive use of a portion of the space with no control during the term of the lease of the injury-causing agent.
Comment (b) to § 17.3 goes on to say: "The rule stated in this section applies only to areas controlled by the landlord which the tenant is entitled to use an appurtenant to his (sic) leasehold for certain permitted purposes." That is not what we have here, it is the exact opposite of what is presented here.
Based on what has been submitted to the court for the purposes of this motion, and only on that, the court cannot find CT Page 1117 such control retained by the lessors over the demised premises that would avoid the rule of landlord nonliability.
But the fact that the landlord is not in possession of the property at the time of injury due to a defective condition does not mean there are not exceptions to the rule of lessor nonliability. The court will now discuss these exceptions.
 B.
For the purposes of the following discussion, the court will assume that the defendants had no control of the premises in this case and that they were "landlords out of possession."
Possession or control of premises is the legal basis of liability so that a landlord out of possession is normally not liable to persons injured on the rented premises. This is the general rule. Law of Torts, Harper, James and Gray, Vol. 5, § 27.7, § 27.16, Restatement 2d Torts, § 356 and it is the rule in our state. Smith v. Housing Authority, 144 Conn. 13,16 (1956); Connecticut Law of Torts, Wright, Fitzgerald 
Ankerman, § 54 (3d ed).
As said in the Restatement 2d Torts: "When land is leased to a tenant, the law of property regards the lease as the equivalent to a sale of the land for the term of the lease. The lessee acquires an estate in the land, and becomes, for the time being, the owner and occupier, subject to all the liabilities of one in possession both to those who enter the land and to those outside it. Therefore, as in the case of the vendor under § 352, it is the general rule that the lessor is not liable to the lessee or to others on the land, for injuries occurring after the lessee has taken possession, even though such injuries result from a dangerous condition existing at the time of the transfer."
Because this rule is at times incongruent with ordinary principles of tort law imposing liability where there is fault and because of the harsh operation of this rule in certain circumstances many exceptions to it have been carved out which are generally set out in §§ 357-362 of the Restatement 2d Torts.[1]
Two important exceptions to the general rule which figure in the resolution of this case are contained in two separate sections of the Restatement, § 358 and § 359. For purposes CT Page 1118 of this discussion, it will be useful to set forth these two separate sections:
 "§ 358. Undisclosed Dangerous Conditions Known to Lessor
 (1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if
 a) the lessee does not know or have reason to know of the condition or the risk involved, and
 b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.
 (2) If the lessee actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions."
 "§ 359. Land Leased for Purpose Involving Admission of Public
 A lessor who leases land for a purpose which involves the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor
 a) knows or by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and
b) has reason to expect that the lessee will admit CT Page 1119 them before the land is put in safe condition for their reception, and
 c) fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it."
The court will discuss these sections in reverse order and will first discuss the so-called "public use" exception and the interplay of that concept with the exception set forth in § 358 of the Restatement which might be called the latent defect section.
(1)
The defendants who have filed this motion for summary judgment may be characterized as owners or lessors of the property on which the alleged injuries occurred to the plaintiffs. The plaintiffs claim to have received injury as a result of being exposed to noxious fumes and substances in the leased premises. The defendants in their motion for summary judgment or at least in their initial brief make the broad claim that: "Although under certain circumstances plaintiffs may seek recovery against third parties for work related injuries, such a recovery is not permitted where it is sought against the owner of a building leased by plaintiff's employer. Stevens v. Polinsky,32 Conn. Sup. 96 (1974)." (P. 6 of 6/19/95 brief). But it is perhaps better to frame the defendant's position in the following way: although other things being equal or in ordinary circumstances a lessor of property not in control of the property is not liable for injuries due to dangerous conditions on the property, liability can be imposed under the so-called public use exception to this rule (§ 359 of Restatement); however, a plaintiff may not rely on the public use exception if the plaintiff is an employee of the lessee.[2]
The initial question to be asked then is can an employee of a lessee bring an action in tort against the lessor under the so-called public use exception set forth in § 359 of the Restatement and accepted by our court. Webel v. Yale University,125 Conn. 515, 523 (1939).
If one examines and compares §§ 358 and 359 of the Restatement and applies a purely linguistic analysis under the public use (§ 359) rule no one but the "public", that is, not CT Page 1120 the lessee or one who stands in his stead such as an employee should have a cause of action against the lessor. Certainly the lessee could not recover for injuries received under the principles of the public use exception. It also strains the ordinary usage of the language to say that the employee would be a person who enters his or her employer-lessee's rented property "for a purpose which involves the admission of the public." This is only underlined when one reads § 358 of the Restatement which deals with "undisclosed dangerous conditions known to the lessor." That section, as opposed to § 359, subjects the lessor to liability for such conditions "to the lessee and others upon the land with the consent of the lessee." Obviously, an "employee" of the lessee would have a cause of action against the lessor under the tort theory set forth in § 358. When the Restatement dealt with the ambit of these exceptions to the general rule of lessor nonliability, it certainly knew how to use explicit language giving a lessee and anyone such as an employee, on the premises with the lessee's consent, a cause of action against the lessor under the particular exception. It gave such a cause of action in § 358 but not in § 359.
What do the cases say, however, about the appropriate ambit of the public use exception to the lessor nonliability? In Webelv. Yale University, supra, the court noted that two jurisdictions recognized the right of a lessee's employee to avail him or herself of the public use exception; one jurisdiction, although previously permitting the exception to operate in favor of an employee, reversed its position in a later case: Harris v.Lewiston Trust Co., 191 A. 34, 37, 38 (Pa. 1937). Kansas similarly reversed its position and now apparently does not permit an employee of the lessee to take advantage of the public use exception. Bailey v. Kelly, 145 P. 556, 557, 558 (Kan. 1915). The two jurisdictions permitting the employee to take advantage of this exception are Illinois, Reichenbacker v. Pakmeyer, 8 Ill. App. 217, and Maine, Nugent v. Boston, 12 A. 797 (Me., 1888). TheWebel case noted this state of the law and made clear that it was not deciding whether an employee of a lessee could sue the landlord under the public use exception but was confining its "attention to a situation where one enters upon leased premises as a business patron of the lessee." 125 Conn. at p. 522. There are no Connecticut Appellate or Supreme Court cases that address this issue. In Tammany v. Woolridge Brothers Inc., 240 F.2d 641,643 (CA 2, 1957), the employee of a tenant sued the landlord for injuries suffered as a result of a fall on wet steps. The plaintiff contended that the landlord failed to provide a CT Page 1121 handrail and apparently relied on the public use exception. As to what the court calls this "second ground" for recovery, the Second Circuit predicted our courts will probably follow the rule set down in Restatement of Torts First § 332 permitting an employee to recover against the landlord as a result of a structural defect even where his or her employer cannot. This is somewhat confusing since § 332 of both the First and Second Restatement merely define what a business invitee is, say nothing about liability and do not deal with lessor responsibility as such. It is unclear what the Tammany court is referring to since the public use exception is set forth in § 359 of both Restatements not § 332.
The case of Stevens v. Polinsky, 32 Conn. Sup. 96 (1974) in effect decided that an employee of the lessee should not be permitted to take advantage of the public use exception. TheStevens court notes that in analyzing the public use exception, what is now 5 Harper, James and Gray, Law of Torts, says that: "There is doubt that the lessor's duty, even in cases where it is owed to the lessee's patrons, extends to other licensees or invitees of the lessee (though their presence might be likely enough to bring them within the class to whom a duty of care was owed under the test generally prevailing)", § 27.16, pp. 283-284. The Restatement itself at comment e to § 359 also says that under the public use exception, "[t]he liability is based upon the fact that the lessor knows that the land is to be thrown open to the public for entry, while it is in the same condition as when he gives possession to his (sic) lessee. Therefore, he (sic) is subject to liability only to those persons whom the lessee admits to the land for that purpose. He (sic) is not subject to liability to invitees of the lessee who come upon the premises for a business purpose other than that for which they are open to the public, as in the case of a truck driver delivering provisions to a restaurant."
In analyzing the public use exception, the Stevens court goes on to reason that the deep pocket theory led to the adoption of this exception to the general rule of nonliability of the lessor but that theory does not apply so clearly to injuries sustained by employees of the lessee. In Stevens the court noted the tenant employer or its insurer is the real party in interest since the recovery didn't exceed the worker's compensation payments and this can result in absurdities since in Stevens on a third party complaint the owner-lessor was awarded indemnification pursuant to their contract against the employee and its insurer. The court CT Page 1122 reasoned the worker's compensation act affords sufficient protection to the injured employee and no further expansion of legal doctrine is required. The loss would be properly allocated to the employer and its workers' compensation carrier "and there is no reason to shift that burden to the owners or their liability carrier."
Considering the broad policy purposes behind the workers' compensation act, this seems to make some sense. The act was passed to guarantee recovery to workers when they received injuries apart from the question of issues of fault. The employer received the assurance that once it was subjected to the scheme of the act it would not be subjected to suits in negligence. Thus, on the one hand, unnecessary legal costs and unpredictable verdicts would be avoided which would have a deleterious effect on business planning and operation and, on the other hand, the workers would have predicable rights of recovery for injuries and would not have to expose themselves to the vagaries of the courts and the tort system of recovery. These broad purposes would in some sense be subverted if the public use exception is extended so as to give the lessee's employee an action against the lessor of their employer's plant or office building — the employer will have to pay increased commercial rent to cover the lessor's increased insurance costs.
To approach the problem from another perspective: tort law is concerned not only with compensating victims injured by another's fault but also is concerned with providing incentives to correct conditions that cause injury. It has been determined that there is good reason to depart from traditional common law rules of lessor nonliability when property is leased under circumstances where the lessor knows members of the public are to be invited on the land by the lessee. The lessor is in control of the situation. He or she can determine the financial and social responsibility of any prospective tenant. In order that an innocent member of the public, injured by a condition on the land when it was rented, is not left without recourse, it is desirable to impose liability on the lessor — the lessor is more likely to have the resources to compensate for any injury and by imposition of liability will not be able to pass off responsibility to correct a dangerous condition to a lessee whom in many instances the lessor knows or has reason to know does not have the means or desire to make the property safe.
These reasons do not operate when an employee is protected by CT Page 1123 workers' compensation and the employer's compensation carrier can exert great pressure on the employer to correct conditions that might be dangerous to the employees. It should be noted that the dangerous conditions contemplated under the public use exception are not necessarily concealed or unknown to the lessee.
The court should also discuss some more recent cases brought to its attention by the defendants.
Two cases cited by the defendants explicitly support their position that the public use exception to lessor nonliability cannot be relied on by an employee of the lessee. James v. Boines,294 A.2d 94, 95, 96 (Del. 1972 ); Place v. Sagamore Center,Inc., 604 N.E.2d 671, 675 (Ind. 1992). Three cited cases make broad statements that a landlord who has surrendered control of the premises cannot be sued by a lessee's employee for a defective condition. Two of them, however, do not even discuss the exceptions to this general rule so apparently they were not raised by the plaintiff. Kemp v. Murphy Mfg. Co., 430 So.2d 558,559 (Fla. 1982); Sheehan v. El Johnan, Inc., 650 N.E.2d 819, 820
(Mass. 1995). One mentions the latent defect and public use exceptions but since they do not figure in the court's decision, it is difficult to determine whether they were pressed by the plaintiff. McCurtis v. Detroit Hilton, 242 N.W.2d 541, 543 (Mich. 1976).
New York law apparently operates in a world of its own, fixated as that state seems to be with the zone of danger concept not only in this area but in the bystander emotional distress area. In New York, an employee can bring suit against his employer's landlord under the public use exception to lessor nonliability as long as the injury occurred in an area open to the public. Campbell v. Elsie Holding Co., Inc., et al.,167 N.E. 582, 583 (NY 1929); Strade v. Ryan, 470 N.Y.S.2d 707, 708 (1983);Brady v. Cocozzo, 570 N.Y.S.2d 748, 749 (1991); DeBrino v.Benequista and Benequista Realty Co., 572 N.Y.S.2d 497, 498 (1991);Fresina v. Nebush, 619 N.Y.S.2d 447 (1994). This variation of the one of danger analysis is unsatisfactory since it does not deal with underlying policy considerations.
Based on the earlier discussion of Stevens and the reasoning of the Kemp and Sheehan opinions, the court concludes that an employee of a lessee should not be permitted to sue the lessor under the public use exception to lessor nonliability. CT Page 1124
(2)
Even if the lessor has surrendered complete control of the premises and that is made explicit in a lease which does not even, for example, impose a duty of repair on the lessor, the lessor can still be liable for undisclosed dangerous conditions that were known or should have been known to the lessor. This concept is embodied in § 358 of the Restatement 2d Torts. Connecticut certainly recognizes this doctrine. Connecticut Lawof Torts, 3d ed., Wright, Fitzgerald, Ankerman. Under the Restatement, the lessee injured by such a condition can bring suit against the landlord and this is also true under Connecticut case law. Civale v. Meriden Housing Authority, 150 Conn. 594
(1963); Francis Masterson Administratrix, et al. v. Atherton,149 Conn. 302, 305 (1962); Ayala v. B B Realty Co.,32 Conn. Sup. 58, 61 (1974). If the landlord can be liable to the tenant under this exception it is difficult to conjure up a reason why liability would not run to the employee of the tenant. Stevens v.Polinsky, supra, does not hold otherwise since the only exception discussed in that case was the public use exception.32 Conn. Sup. at p. 99. Cases like Kemp v. Murphy Mfg. Co., supra, Sheehanv. El Johnan, Inc., supra, and McCurtis v. Detroit Hilton, supra, cited by the defendants for the broad proposition that an employee of a lessee cannot sue a lessor who does not have possession of the premises, for reasons previously discussed do not discuss the latent defect exception.
In fact, other jurisdictions have held that the lessee's employee can rely on this exception to bring suit against the lessor. Brownsville Navigation District v. Izaguirre,829 S.W.2d 159, 161 (Tex. 1992); Stewart v. Stowe Mills, Inc.,167 S.E.2d 817, 821 (N.C. 1969); cf Fontan v. Estopinal, 529 So.2d 1331,1332-1333 (La. 1988); Murphy v. Barlow Realty Co., 7 N.W.2d 684,687, 689 (Minn. 1943) (rev'd on other grounds).
The lessor in these cases is by definition the only one who knows or has reason to know of the defective condition and this provides a powerful reason to impose liability on the lessor since tort law is concerned not only with compensating the injured but also with encouraging people who know of dangerous situations to remove the danger they present.
Interestingly, for the purposes of this motion, both sides have not concentrated on the applicability of this exception to lessor nonliability. The defendants first argued that, under the CT Page 1125 reasoning of Stevens v. Polinsky, supra, as employees they could not bring suit against them as lessors. Dispute arose over the applicability and ambit of Stevens but then the parties dealt with the issue of whether the defendants maintained control over the demised premises — if that were the case then the exceptions to lessor nonliability would not have to be considered by the court. The plaintiffs also, by implication and then explicitly, seem to argue for abandonment of the caveat emptor common law rule of lessor nonliability by (1) pointing to deposition testimony of Mr. Mills, Sr., where he said the G.M. Association (the defendants for purposes of this motion) had in fact constructed the HVAC system when the building was originally built and then had the HVAC installed in the addition to the building where the plaintiffs worked; and (2) submitting documentation from medical experts found that the defective HVAC system caused the plaintiffs' illnesses. For the reasons discussed in the first section of the court's decision, without more and as so stated, this would not defeat the defendant's motion in light of the fact that our state still follows the caveat emptor rule of lessor nonliability for defective conditions on the premises.
But the plaintiffs have fairly raised the latent defect exception in their pleadings and their February 16, 1996 brief and it was referred to by both sides in the November 4, 1996 oral argument on this motion.
Can the exception be said to apply and does the evidence presented on this motion indicate that the question of its application should be left to the trier of fact?
There does not appear to be much dispute over the fact that the HVAC system was built by architects and builders the defendants engaged when the original premises were built. The same appears to be true of the HVAC system installed or extended for the new addition on the building which included the office where the plaintiffs worked. For the purposes of this motion the defendants have not chosen to contest the plaintiffs' claim as set forth in medical reports that their ailments were caused by a defective HVAC system which they caused to be installed.
Whether the plaintiffs can take advantage of the latent defect exception in this case turns on what the landlord knew or should have known about the defective HVAC system. (See § 358 of Restatement 2d Torts quoted previously). The older cases CT Page 1126 required that the landlord have actual knowledge of the dangerous condition. The trend of the cases adopts the Restatement view which would also impose liability if the "lessor knows or hasreason to know of the condition or realizes or should realize the risk involved." Section 358(1)b (emphasis added). Also see TheLaw of Torts, 2d ed. Harper, James Gray, Vol. 5, § 27.16, page 275; Phillips v. Stowe Mills Inc., 167 S.E.2d 817, 820 (NC 1969); Freitag v. Evenson, 375 P.2d 69, 70 (Or. 1962); Johnson v.O'Brien, 105 N.W.2d 244, 246 (Minn. 1960).
Connecticut had required actual knowledge by the landlord of the defect before the lessee could take advantage of the latent defect exception to lessor nonliability and explicitly distinguished the lack of any such requirement for the public use exception. DesMarchaus v. Daly, 135 Conn. 623, 626 (1949). But our state apparently follows the Restatement view as the result of the language in Civale v. Meriden, 150 Conn. 594 (1963) which, at page 597, says that the caveat emptor rule does "not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively to the landlord." (Emphasis added). Commentators also seem to think Connecticut follows the Restatement view. See Connecticut Law of Torts, 3d ed., Wright, Fitzgerald, Ankerman, § 57, p. 148; ConnecticutJury Instructions, Wright Ackerman, § 447 (4th ed); also seeThomas v. Roper, 162 Conn. 343, 350 (1972).
Under the Restatement view or, to be more exact, Connecticut's apparent variation on it, the alleged defect in the HVAC system can be said to be one of "faulty design". It was so designed so as not be able to feed enough fresh air into work areas leading to a buildup of dangerous levels of gases which led to the alleged injuries. The question then becomes should the lessors here have had reason to know of this condition and should they have realized the risk involved; that is, under Connecticut case law language, can we impute constructive knowledge to the lessors since there is no claim of "actual" knowledge of the defect and the dangers presented?
This is a difficult question based on the facts presented here. The court has not found any case anywhere directly on point.
In the Law of Torts, Harper, James, Gray, two cases are CT Page 1127 referred to which show a difference of treatment where the defective condition was something actually built or constructed by the landlord. Oddly enough, this fits into the language of the Connecticut cases which say the caveat emptor rule does not apply where defective design is involved and the lessor had no constructive knowledge of the dangerous condition.
In Strothman v. Houggy, 142 A.2d 769 (pa. 1958), the lessor was held liable as a builder for negligence despite the fact that he had used the same method of construction for many years and considered it safe. Id. 772. In Charlton v. Brunelle, 130 A. 216 (NH 1925), although the unreasonably dangerous condition caused damage and the landlord constructed it, the landlord could not be held liable if he had an honest belief that the condition was safe. Id. 218. In Georgia "in the case of defective construction by the landlord, its knowledge of the defect is conclusively presumed". Ragland v. Rooker, 183 S.E.2d 579, 582 (GA 1971); also see case of Frietag v. Evenson, 375 P.2d 69 (Or. 1962).
The court has read the deposition testimony of Mrs. John Mills, Sr., and Jrs., and that of Stephen Besse, all of whom occupy various positions in G.M. Associates and Gravymaster. There is a question of fact, in the court's view at least, as to the involvement of G.M. Associates in approving and inspecting the plans submitted by the architect or general contractor as to the building plans for the original construction of the premises and the 1987 addition, particularly as such construction activity involved the HVAC system.
Perhaps Strothman and especially Ragland go too far if the Restatement analysis is to remain viable. These cases can be said by indirection to adopt the Sargeant v. Ross, supra, stance which substitutes a common law negligence test that merely asks whether, under all the circumstances, the landlord acted reasonably. But again that is not Connecticut law.
It is also true that the burden of persuasion is upon the lessee, or one standing it its position, to take the case out of the "caveat emptor" rule of lessor nonliability and establish an exception to the general rule such as the latent defect exception. Masterson v. Atherton, 149 Conn. 302, 306-307 (1962).
But it seems to the court that once it is established that the actual construction of the dangerous condition was done by the lessor or with its involvement and/or at its direction, the CT Page 1128 burden of producing some evidence would shift to the lessor to establish that the lessor had no reason to know of the dangerous condition and the deleterious effect it might have on people thereby injured who were on the premises. Proof of such lessor involvement in the construction of the dangerous condition would not change the ultimate burden of proof for establishing grounds for the latent defect exception but it would establish a prima facie case and obviate the possibility of summary judgment relief or a directed verdict at trial if such evidence was not forthcoming from the lessor. This allocation of burdens is not unfair since the lessor has exclusive control of and knowledge of the facts which could provide the necessary explanation of the lessor's knowledge or lack of knowledge of the dangerous condition and the risks it presented before and while it was being constructed.
This record is, in the court's opinion, devoid of the evidence necessary to rebut what in effect is the plaintiffs' prima facie case which the court has found to be established or concerning which there is a question of fact as to whether it has been established that the lessors here were sufficiently involved in the building of the dangerous condition. Therefore, the court will deny the motion for summary judgment.
Corradino, J.